Cortez JACKSON, Appellant,

v.

The STATE of Texas, State.

No. 2–00–041–CR.

Court of Appeals of Texas,
Fort Worth.

May 31, 2001.

Pete Gilfeather, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Chief Appellate Section, Michael R. Casillas, Mary Butler, Asst. Dist. Attys., Fort Worth, for Appellee.

Panel A: CAYCE, C.J.; GARDNER and WALKER, JJ.

## OPINION

GARDNER, Justice.

## I. INTRODUCTION

A jury found Appellant Cortez Jackson guilty of intoxication manslaughter and as- sessed punishment at sixty years' confine- ment. Appellant raises nine points on ap- peal.

In his first point, Appellant complains that the State's expert testimony concern- ing the level of cocaine in his system was speculative and conjectural. Appellant contends in his second and eighth points that the trial court erred in refusing to grant a mistrial. He argues in his third point that the trial court erred in admit- ting a document over his objections. In his fourth point, Appellant alleges the trial court erred in allowing the State to im- peach him with convictions that were more than ten years old. Appellant asserts in his fifth through seventh points that the trial court erred in failing to charge the jury on the law of necessity, duress, and negligent homicide. Finally, Appellant claims the trial court erred in denying his motion for a directed verdict. We affirm.

## II. BACKGROUND

Thomas Shepard was driving around at- tending to errands in Grand Prairie when Appellant passed him driving a red Ex- plorer at a high rate of speed, almost rear- ending another car and cutting in front of him. Shepard then witnessed Appellant run two red lights on either side of a nearby highway underpass, turn, and dis- appear. As Shepard pulled into a gas station, he saw the red Explorer again. While Appellant pumped his gas, Shepard observed him "dancing around" to loud music coming from his car. When Appel- lant was finished, he drove over the curb and down the grass embankment to the street. Shepard then left the gas station and encountered Appellant's car sitting crossway in the middle of the street. As Shepard began to stop, Appellant drove off, once again driving over the curb. Shepard then called 911 to report Appel- lant's erratic driving.

Shepard followed Appellant while talking to the police department on his cell phone. Appellant proceeded to travel in excess of 100 miles per hour and passed a tractor-trailer by cutting into the oncoming lane of traffic, missing the front of the tractor-trailer by a foot and a half. Appellant ran another red light, struck James Woods's car, and killed him.

Appellant was taken to the hospital, where a sample of his blood was drawn. Testing revealed that Appellant had cocaine in his system. Appellant testified that he had smoked crack cocaine at about 5:30 the morning of the accident, about five hours before the accident occurred. Chris Heartsill, the toxicologist who tested Appellant's blood, testified that ingesting enough cocaine to result in a high blood concentration would have resulted in behavior consistent with Appellant's purported behavior at the gas station and his erratic driving.

### III. EXPERT TESTIMONY

In his first point, Appellant contends the testimony of the State's expert concerning the level of cocaine in Appellant's blood at the time of the accident was speculative and conjectural. Specifically, Appellant complains about the State asking Heartsill whether Appellant had a high, medium, or low level of cocaine in his blood at the time of the accident.

Texas Rule of Evidence 702 permits a witness who is "qualified as an expert by knowledge, skill, experience, training, or education" to testify "in the form of an opinion or otherwise" if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." TEX.R.EVID. 702. Such testimony must not be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or other factors. *Id.* 403.

Any examination of the admissibility of expert testimony must begin with *Kelly v. State,* 824 S.W.2d 568 (Tex.Crim.App. 1992). The test adopted in *Kelly* "applies to all scientific evidence offered under Rule 702." *Hartman v. State,* 946 S.W.2d 60, 63 (Tex.Crim.App.1997). Accordingly, we will determine whether Appellant met his burden of establishing the scientific reliability of the testimony under the *Kelly* standard. *Kelly,* 824 S.W.2d at 573.

■ Once it is determined the proffered evidence is relevant, the proponent of scientific evidence has the burden of proving its scientific reliability by clear and convincing evidence. *Id.* To satisfy this burden, the proponent must make a technical showing, outside the presence of the jury, demonstrating: (1) a valid underlying scientific theory, (2) a valid technique applying the theory, and (3) that the technique was properly applied on the occasion in question. *Id.; Jordan v. State,* 928 S.W.2d 550, 555 (Tex.Crim.App.1996). Factors that may influence a trial court's determination of reliability include: (a) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if ascertainable; (b) the qualifications of the expert testifying; (c) the existence of literature supporting or rejecting the underlying theory and technique; (d) the potential rate of error of the technique; (e) the availability of other experts to test and evaluate the technique; (f) the clarity with which the underlying theory and technique can be explained to the court; and (g) the experience and skill of the person who applied the technique on the occasion in question. *Kelly,* 824 S.W.2d at 573.

■ We will not disturb the trial court's decision to admit expert scientific testimony absent an abuse of discretion. *Hinojosa v. State,* 4 S.W.3d 240, 251 (Tex.Crim.

App.1999). That is, if the trial court's decision to exclude the evidence falls within the "zone of reasonable disagreement," we will not interfere. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) (op on reh'g).

Appellant states that opinions that are speculative or conjectural are not admissible even if the witness is an expert. *See Naegeli Trans. v. Gulf Electroquip, Inc.*, 853 S.W.2d 737, 741 (Tex.App.— Houston [14th Dist.] 1993, writ denied). Appellant argues that the question of whether the level of cocaine in his system was high, medium, or low is not based on any theory generally accepted in the scientific community. He thus contends it is impossible to cross-examine the witness because high, medium, and low are not definite measurements.

During his testimony, Heartsill, a toxicology chemist, described the process he used to test for alcohol and drugs in a sample of blood. He explained that the machines used to test Appellant's blood were working properly. Heartsill testified that at the time he tested Appellant's blood, he identified the presence of 0.08 milligrams of lidocaine per liter and 0.10 milligrams of cocaine per liter. He explained that cocaine has a half-life of 0.7 to 1.5 hours, which can be used through extrapolation to determine the level of the drug in the blood at an earlier time. He testified that this process is generally accepted in the forensic community as being accurate and reliable. In Heartsill's opinion Appellant had a high level of cocaine in his system at the time of the accident.

Viewing the evidence in the light most favorable to the trial court's decision, we conclude that the State demonstrated by clear and convincing evidence that the scientific principle underlying Heartsill's testimony was valid, that the technique itself was valid, and that the technique was proper. *See Durham v. State*, 956 S.W.2d 62, 66 (Tex.App.—Tyler 1997, pet. ref'd) (holding the trial court did not abuse its discretion in concluding that expert testimony that established intoxication at the time of an accident through the use of extrapolation using the half-life of marijuana satisfied the three criteria for reliability in *Kelly* ). Because the extrapolation procedure used by Heartsill to determine the amount of cocaine in Appellant's system at the time of the accident was scientifically reliable, the only question left to determine is whether Heartsill's failure to testify as to the numerical concentration of cocaine at the time of the accident renders the trial court's admission of the evidence an abuse of discretion.

As Appellant established through his cross-examination of Heartsill, the Texas Legislature has not set a numerical blood-cocaine level for use in determining whether a person is intoxicated. However, section 49.01 of the penal code defines "intoxicated" in relevant part as:

> not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body.

TEX.PENAL CODE ANN. § 49.01 (Vernon Supp.2001). Furthermore, section 49.08 provides that a person commits an offense of intoxication manslaughter if the person:

> (1) operates a motor vehicle in a public place, operates an aircraft, [or] a watercraft; and
>
> (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake.

*Id.* § 49.08. Therefore, the State merely had to prove that Appellant lost the normal use of his mental and physical facul-

ties due to the cocaine in his system; it was not required to prove the exact level of cocaine in his system at the time of the accident. TEX.PENAL CODE ANN. §§ 49.01(2)(A), 49.08.

Heartsill testified that cocaine affects the mental status by increasing risk taking and leading to poor judgment. Therefore, Heartsill testified, a person with a high level of cocaine in their system would not have normal use of the mental or physical faculties. Heartsill elaborated further that hypothetically a person who ingested enough cocaine to give them a high blood concentration would act euphoric, drive over curbs, take unnecessary risks, drive over the speed limit, go into oncoming traffic to pass a vehicle, and disregard traffic control devices. Because Heartsill's testimony as to the level of cocaine in Appellant's blood was supported by further testimony concerning its relevance to a person's normal use of his mental or physical faculties, we hold the trial court did not abuse its discretion in allowing Heartsill to testify that Appellant had a high level of cocaine in his system at the time of the accident. We overrule Appellant's first point.

## IV. MISTRIAL

Appellant argues in his second and eighth points that the trial court erred in refusing to grant a mistrial due to the State's improper closing argument and the destruction of investigation notes and physical evidence by the police department and the company that tested Appellant's blood.

■■■ Mistrials are "an extreme remedy for prejudicial events occurring during the trial process." *Bauder v. State,* 921 S.W.2d 696, 698 (Tex.Crim.App.1996); *Ex parte Primrose,* 950 S.W.2d 775, 778 (Tex. App.—Fort Worth 1997, pet. ref'd). In fact, the granting of a mistrial should be an exceedingly uncommon remedy. *Bauder,* 921 S.W.2d at 698. We review the trial court's denial of a mistrial deferentially, under an abuse of discretion standard. *Ladd v. State,* 3 S.W.3d 547, 567 (Tex. Crim.App.1999), *cert. denied,* 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000); *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex.Crim.App.1993).

### A. DESTRUCTION OF EVIDENCE

Appellant argues that the Grand Prairie Police Department's destruction of interview notes and the destruction of the vials of blood by the company that tested Appellant's blood amounted to prosecutorial misconduct under *Bauder,* 921 S.W.2d at 696 and *Ex parte Bauder,* 974 S.W.2d 729 (Tex.Crim.App.1998). However, the question in the *Bauder* cases was, "given that the trial court *did* grant appellant's motion for mistrial, is retrial barred by the Texas Constitution's Double Jeopardy Clause due to prosecutorial misconduct?" *Ex parte Bauder,* 974 S.W.2d at 731; *see also Bauder,* 921 S.W.2d at 699 (holding that "a successive prosecution is jeopardy barred after declaration of a mistrial at the defendant's request, not only when the objectionable conduct of the prosecutor was intended to induce a motion for mistrial, but also when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request"). Because the trial court in this case did not grant Appellant's motion for a mistrial, and because Appellant is not complaining that the State is barred by double jeopardy from reprosecuting him for the same offense, the *Bauder* cases do not apply to this situation. Instead, we will determine whether the State adequately preserved evidence.

■■■ The State has a duty to preserve exculpatory evidence. *California v.*

*Trombetta,* 467 U.S. 479, 488–89, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984); *see also Mahaffey v. State,* 937 S.W.2d 51, 53 (Tex. App.—Houston [1st Dist.] 1996, no pet.). When an accused complains of lost evidence, he must show that the evidence lost is both material and favorable to him. *United States v. Valenzuela–Bernal,* 458 U.S. 858, 873, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982); *Mahaffey,* 937 S.W.2d at 53. "A showing that the lost evidence might have been favorable does not meet the materiality standard." *Hebert v. State,* 836 S.W.2d 252, 254 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (emphasis omitted); *see also Gamboa v. State,* 774 S.W.2d 111, 112 (Tex.App.—Fort Worth 1989, pet. ref'd). In addition, the accused must show that the State acted in bad faith when it failed to preserve the evidence in order to show a violation of due process or due course of law. *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988) (due process); *Mahaffey,* 937 S.W.2d at 53 (due course of law).

■ Appellant concedes that the loss or destruction of the interview notes and the vials of blood was unintentional. Appellant contends that the loss and destruction of the evidence nevertheless denied him a fair trial. However, because of his concession, Appellant has failed to prove that the State acted in bad faith when it failed to preserve the evidence. *Youngblood,* 488 U.S. at 58, 109 S.Ct. at 337. Therefore, the trial court did not abuse its discretion by refusing to grant Appellant a mistrial due to the destruction or loss of the interview notes and blood. We overrule Appellant's second point.

### B. CLOSING ARGUMENTS

■ In his eighth point, Appellant argues that the trial court erred in refusing to grant a mistrial in response to the State's improper closing arguments. Specifically, Appellant complains about the State's argument that "[f]irst of all, [Shepard] thought this guy stole gas from the gas station." Appellant testified during trial that he had forgotten to pay for the gas and was turning around to go back and pay for it. There was no testimony during trial that Shepard thought Appellant had stolen the gas. The trial court sustained Appellant's objection to the State's argument and ordered the jury to disregard it, but denied his motion for mistrial.

■ The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted into evidence. *Campbell v. State,* 610 S.W.2d 754, 756 (Tex.Crim.App. [Panel Op.] 1980); *Faulkner v. State,* 940 S.W.2d 308, 311 (Tex. App.—Fort Worth 1997, pet. ref'd) (en banc op. on reh'g). To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State,* 848 S.W.2d 85, 94–95 (Tex.Crim.App.1992), *cert. denied,* 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex.Crim.App.1973).

■ The State conceded in oral arguments that this argument was outside the record. Therefore, the sole issue for our consideration is whether the trial court erred in denying the mistrial. *Faulkner,* 940 S.W.2d at 312. The resolution of this issue depends on whether the court's instruction to disregard cured any prejudicial effect. *Id.* In assessing the curative effect of the court's instruction to disregard, the correct inquiry is whether the argument was extreme, manifestly improp-

er, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that an instruction to disregard could not cure its prejudicial effect. *Hernandez v. State*, 819 S.W.2d 806, 820 (Tex.Crim.App. 1991), *cert. denied*, 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992); *Faulkner*, 940 S.W.2d at 312. If the instruction cured any harm caused by the improper argument, a reviewing court should find that the trial court did not err. *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex.Crim.App.) (holding that almost any improper argument may be cured by an instruction to disregard), *cert. denied*, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995); *Faulkner*, 940 S.W.2d at 312. Only if the reviewing court determines the instruction was ineffective does the court go on to decide, in light of the record as a whole, whether the argument had a substantial and injurious effect or influence on the jury's verdict. Tex.R.App.P. 44.2(b).

■ Where the prosecutor argues outside of the record and injects personal opinion, an instruction to disregard will cure error unless the argument "is clearly calculated to inflame the minds of the jurors and is of such character as to suggest the impossibility of withdrawing the impression produced on the juror[s'] minds." *Davis v. State*, 684 S.W.2d 201, 205 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd); *see also Davis v. State*, 894 S.W.2d 471, 475 (Tex.App.—Fort Worth 1995, no pet.). After the trial court sustained Appellant's objection to the argument, the trial court instructed the jury to "recall the evidence." The State then corrected its interpretation of the evidence and told the jury, "[t]his guy told you he didn't pay for the gas." After reviewing the record, we conclude the improper argument was cured by the instruction to disregard, and the trial court did not abuse its discretion

in refusing to grant a mistrial. Appellant's eighth point is overruled.

## V. ADMISSION OF EVIDENCE

■ In his third point, Appellant complains that the trial court improperly admitted his blood sample into evidence over his objections. Specifically, Appellant contends that the trial court improperly allowed the State to introduce a DIC–23A form as State's exhibit 12, which is a document that accompanied the blood sample into evidence in order to prove the blood sample belonged to Appellant. The form is sent to Austin to be used in administrative license revocations.

Another form also accompanied the blood sample, which was a request form that identified the subject, the person who drew the blood, where the blood was drawn, and other information. This request form was introduced into evidence as State's exhibit 16. While Appellant argues that he objected to State's exhibit 12 on the ground that the proper predicate for treating it as a business record had not been laid, it appears that this objection was actually made in reference to State's exhibit 16, the request form, instead of to State's exhibit 12. In fact, in regard to the DIC–23A form, the record reflects that at the time the State attempted to enter exhibit 12 into evidence, Appellant said, "Your Honor, as far as—I have no objections to Exhibit 12." Therefore, Appellant has waived any error as to the DIC–23A form by failing to object in the trial court. *See* Tex.R.App.P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex.Crim.App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999). We overrule Appellant's third point.

## VI. USE OF PRIOR CONVICTIONS

■ Appellant argues in his fourth point that the trial court erred when it

allowed the State to impeach his credibility during its cross-examination of him with a prior conviction that was too remote to be admissible under rule 609 of the rules of evidence and by admitting that testimony during punishment.[1] *See* TEX.R.EVID. 609. Whether to admit remote convictions lies within the trial court's discretion and depends on the facts and circumstances of each case. *Lucas v. State*, 791 S.W.2d 35, 51 (Tex.Crim.App.1989).

A prior conviction is presumptively inadmissible for impeachment if more than ten years have elapsed since the date of conviction or of the witness's release from the confinement imposed for the prior conviction, whichever is later. TEX.R.EVID. 609(b). Appellant complains of the admission of two robbery convictions from 1983 and 1986. More than ten years had elapsed between Appellant's complained-of prior convictions and his January 2000 trial for intoxication manslaughter. However, even a conviction deemed to be too remote under rule 609(b) can be admitted for impeachment if the court determines, in the interest of justice, that its probative value substantially outweighs its prejudicial effect. *Id.* 609(b); *Hernandez v. State*, 976 S.W.2d 753, 755 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd); *Butler v. State*, 890 S.W.2d 951, 954 (Tex. App.—Waco 1995, pet. ref'd).

 In addition, the court of criminal appeals has carved out an exception to the general rule. If more than ten years have elapsed, a prior conviction will not be held remote if the witness's lack of reformation is shown by evidence of an intervening conviction for a felony or a misdemeanor involving moral turpitude. *See Lucas*, 791 S.W.2d at 51; *McClendon v. State*, 509 S.W.2d 851, 855–57 (Tex.Crim. App.1974) (op. on reh'g); *Crisp v. State*, 470 S.W.2d 58, 59 (Tex.Crim.App.1971). Evidence of the lack of reformation through subsequent felony and certain misdemeanor convictions may then cause the prior conviction to fall outside the general rule and not be subject to the objection of remoteness. *See McClendon*, 509 S.W.2d at 855–56; *Crisp*, 470 S.W.2d at 59.

Appellant contends that because the new rules of evidence do not incorporate this previously established exception that remoteness of convictions may be cured by a subsequent conviction for a felony or misdemeanor involving moral turpitude, the exception is no longer valid. However, Appellant has provided no support for his blank assertion. In fact, the new rules of evidence did not specifically abolish the exception, and it continues to be applied by the courts. *See* TEX.R.EVID. 609; *Rodriguez v. State*, 31 S.W.3d 359, 363–64 (Tex. App.—San Antonio 2000, pet. filed); *Hernandez*, 976 S.W.2d at 762–63 (holding that the traditional exception did not apply where intervening misdemeanor convictions at issue did not involve moral turpi-

---

1. The State argues that Appellant has waived his argument that the trial court erred in admitting, during punishment, his testimony in which the State impeached him using prior convictions because Appellant has limited his argument in favor of this point to the claim that the convictions were too remote to be used as impeachment evidence. Under rule 38.1(h) of the Texas Rules of Appellate Procedure, every appellant's brief must contain a clear, concise argument in support of his contention, including appropriate citations to authorities and to the record. TEX.R.APP.P.

38.1(h). By raising an issue and failing to present any argument or authority on that issue, the party waives that issue. *Bridgewater v. State*, 905 S.W.2d 349, 354 n. 5 (Tex. App.—Fort Worth 1995, no pet.) (construing former Texas Rules of Appellate Procedure 74(f)). Because Appellant's brief is devoid of any argument or supporting authority on the trial court's error in admitting this impeachment testimony during punishment, he has waived the right to complain about this issue on appeal.

tude). Therefore, we will continue to apply the previously established exception.

■ In this case, the State impeached Appellant with other prior convictions that occurred within ten years of Appellant's current trial for intoxication manslaughter. These convictions consisted of a 1997 conviction for deadly conduct, a 1994 conviction for theft, a 1993 conviction for escape, and a 1993 conviction for assault on a female victim causing bodily injury. Theft and misdemeanor assault on a female are crimes of moral turpitude. *Arambula v. State*, 133 Tex.Crim. 474, 112 S.W.2d 737, 737 (1938) (theft); *Ludwig v. State*, 969 S.W.2d 22, 30 (Tex.App.—Fort Worth 1998, pet. ref'd) (misdemeanor assault of a woman); *Hardeman v. State*, 868 S.W.2d 404, 405 (Tex.App.—Austin 1993) (misdemeanor assault of a woman), *pet. dism'd*, 891 S.W.2d 960 (Tex.Crim.App.1995). Therefore, Appellant's subsequent misdemeanor convictions involving moral turpitude remove the taint of remoteness from the 1983 and 1986 convictions. *Hernandez*, 976 S.W.2d at 755. As such, the 1983 and 1986 convictions are subject to the standard provided in rule 609(a), which provides that they are admissible if their probative value outweighs their prejudicial effect. Tex.R.Evid. 609(a); *see also Hernandez*, 976 S.W.2d at 755 (explaining that "the 609(a) standard is appropriate because the 'tacking' of the intervening convictions causes a conviction older than 10 years to be treated as not remote").

■ In conducting a balancing test to determine whether the probative value of the convictions outweighs their prejudicial effect, the court should consider the following nonexclusive factors: (1) the prior convictions' impeachment value; (2) their temporal proximity to the crime on trial; (3) the similarity between the prior offenses and the present offense; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. *Theus v. State*, 845 S.W.2d 874, 880 (Tex.Crim.App.1992). We will consider these factors as they relate to the case before us.

### A. IMPEACHMENT VALUE

■ In *Theus*, the court stated that the impeachment value of crimes that involve deception is higher than those involving violence because crimes of violence have a higher prejudicial potential than impeachment value. *Id.* at 881; *see also Jackson v. State*, 11 S.W.3d 336, 340 (Tex. App.—Houston [1st Dist.] 1999, pet.ref'd) (explaining that crimes of violence have a higher potential for prejudice and weigh against admission). When a party seeks to impeach a witness with evidence of a crime that relates more to deception, the first factor weighs in favor of admission. *Theus*, 845 S.W.2d at 881. Robbery involves theft, which has been held to be a crime of deception. *See* Tex.Penal Code Ann. § 29.02 (Vernon 1994); *Bryant v. State*, 997 S.W.2d 673, 676 (Tex.App.—Texarkana 1999, no pet.). However, robbery also involves the threat or use of violence. *See* Tex.Penal Code Ann. § 29.02. Consequently, it is not clear whether robbery necessarily contains the element of deception. We hold that this factor weighs against admission.

### B. TEMPORAL PROXIMITY

■ This second factor will favor admission of the prior conviction if (1) the past crime is recent, and (2) the witness has demonstrated a propensity for running afoul of the law. *Theus*, 845 S.W.2d at 881. Even though the robbery convictions about which Appellant complains occurred more than ten years before his present trial, we have already held the convictions are not barred by the remoteness objection. *See Crisp*, 470 S.W.2d at 59–60.

Furthermore, the frequency of Appellant's convictions demonstrates a propensity for running afoul of the law. Thus, this factor weighs in favor of admission.

## C. SIMILARITY

■ The third *Theus* factor examines the similarity between the charged offense and the past crime. If the past crime and the charged crime are similar, then the third factor will militate against admission because similarity suggests the possibility that the jury could convict on the perception of a pattern of past conduct rather than on the facts of the charged offense. *Theus,* 845 S.W.2d at 881. Under this rationale, the possibility is remote that the jury in this case convicted Appellant based on a pattern of past conduct because there is little similarity between robbery and intoxication manslaughter. Appellant conceded as much in his brief. Furthermore, the jury was instructed that it was only to consider the robbery convictions for the purpose of assessing Appellant's credibility. Therefore, the third factor would weigh in favor of admission.

## D. IMPORTANCE OF APPELLANT'S TESTIMONY AND CREDIBILITY

The fourth and fifth factors deal with the importance of the Appellant's testimony at trial and his credibility as a witness. Generally, when the case involves the testimony of only the defendant and the State's witnesses, the importance of the defendant's credibility and testimony escalates. *Id.* Appellant was not the only defense witness in this case. However, he was the only defense witness who testified about the events leading up to the collision. The other two defense witnesses only testified as to the events between Shepard and Appellant after the crash and Appellant's injuries. Because the crime had already been committed before the other defense witnesses' observations occurred, and because Appellant was the only defense witness to testify as to his beliefs about Shepard before the accident, how much cocaine he had, and the events leading up the crash, we hold that Appellant's credibility and testimony was important as to those particular events. Therefore, these factors weigh in favor of admission.

## E. APPLICATION OF FACTORS

*Theus* factors two through five support admission of prior convictions to impeach the Appellant's credibility. Only the first factor, which examines the impeachment value of prior crimes, weighs against admission.

In *Theus,* the court held that the lack of impeachment value of a prior conviction for arson overrode the other factors. *Id.* Its reasoning was twofold. First, the arson conviction had very little probative value on the question of appellant's credibility, but it carried a significant prejudicial effect. *Id.* at 881–82. The court noted that the reference to arson had the potential to conjure up images of "burning buildings and insurance fraud." *Id.* at 882 n. 9. Second, the trial judge missed an opportunity to dispel the prejudicial effect of the testimony when he prohibited the defense from presenting facts related to the arson conviction. *Id.* at 882. After a domestic dispute, the defendant had poured a beer can full of gasoline into his girlfriend's postal slot and ignited it. *Id.* There was no monetary damage. *Id.* at 877. The court of criminal appeals believed that the true nature of these facts greatly differed from the images an arson conviction might conjure up in a juror's mind. *Id.* at 882 n. 9.

This case can be distinguished on both grounds. First, the potential prejudicial effect of robbery is less dramatic than that created by images of arson. Second, this

trial court specifically instructed the jury that it could only consider the prior convictions to determine Appellant's "credibility as a witness and for no other purpose." Therefore, we do not believe the lack of impeachment value of the prior convictions outweighs the other four *Theus* factors favoring admission. As such, the trial court did not abuse its discretion in admitting the evidence of Appellant's prior convictions for robbery. We overrule Appellant's fourth point.

## VII. JURY CHARGE

In his fifth through seventh points, Appellant alleges that the trial court erred in failing to charge the jury on the law of necessity, duress, and negligent homicide.

■ Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim.App.1994). Initially, we must determine whether error occurred. If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731–32. Error in the charge, if timely objected to in the trial court, requires reversal if the error is "calculated to injure the rights of the defendant," which means no more than that there must be *some* harm to the accused from the error. TEX.CODE CRIM.PROC.ANN. art. 36.19 (Vernon 1981); *see Abdnor*, 871 S.W.2d at 731–32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g). In other words, a properly preserved error will call for reversal as long as the error is not harmless. *Almanza*, 686 S.W.2d at 171.

■ In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the

record of the trial as a whole." *Id.* The burden lies with the defendant to persuade the reviewing court that he suffered some actual harm. *Abdnor*, 871 S.W.2d at 732; *LaPoint v. State*, 750 S.W.2d 180, 191 (Tex.Crim.App.1986) (op. on reh'g). However, because we conclude that there was no error in this case, we do not need to address harm.

■ An accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense. *Granger v. State*, 3 S.W.3d 36, 38 (Tex.Crim.App. 1999); *McGann v. State*, 30 S.W.3d 540, 547 (Tex.App.—Fort Worth 2000, pet. filed). However, in order to be entitled to an instruction on a lesser-included offense, the evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense. *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex.Crim.App. 2000), *cert. denied* —— U.S. ——, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001); *Forest v. State*, 989 S.W.2d 365, 367 (Tex.Crim.App. 1999).

### A. NECESSITY

Appellant testified that he drove the way he did because he was afraid that Shepard was chasing him because of a fight the two of them had had three years earlier. Based on this testimony, Appellant argues that he was entitled to a charge on the law of necessity.

■ To raise necessity, Appellant must admit he committed the offense and then offer necessity as a justification. *Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim.App.1999). In this case, Appellant did not admit to the intoxication manslaughter; he argued that he was not in-

toxicated at the time of the accident. Appellant testified that while he smoked crack cocaine at 5:30 or 6:00 the morning of the accident, he was not high at the time of the accident. Therefore, because Appellant did not admit that he committed the offense, he was not entitled to the defense of necessity. *Id.*

 Moreover, Appellant's argument fails under the elements of the necessity defense. *See* TEX.PENAL CODE ANN. § 9.22 (Vernon 1994). Section 9.22 of the penal code provides that necessity is a defense if:

> (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

> (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

> (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

*Id.* In addition, "imminent" means something that is impending, not pending; something that is on the point of happening, not about to happen. *Smith v. State,* 874 S.W.2d 269, 272–73 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). Harm is imminent when there is an emergency situation and it is "immediately necessary" to avoid that harm. *Id.* at 273. In other words, a split-second decision is required without time to consider the law. *Id.*

The threshold issue is whether the record contains evidence that Appellant reasonably believed his conduct was immediately necessary to avoid imminent harm. Appellant testified that he thought Shepard was chasing him. He also testified that he began speeding when Shepard began honking his horn and pointing at him to tell him to pull over. Appellant testified that Shepard was following so closely behind him that Shepard could have caught him if Appellant had stopped and run. Taking Appellant's testimony as true, even had Appellant been scared of Shepard and had not believed that he could park his vehicle and run away, the testimony only raises an issue of necessity to continue driving. His testimony that he thought Shepard would catch him if he stopped his car does not raise an issue of necessity to drive over the speed limit, disregard traffic control devices, and veer into oncoming lanes of traffic. Therefore, we hold the Appellant has failed to provide any evidence that he reasonably believed his erratic driving was immediately necessary to avoid imminent harm. *See* TEX.PENAL CODE ANN. § 9.22. We overrule Appellant's fifth point.

## B. DURESS

 Appellant argues in his sixth point that the trial court erred in failing to charge the jury on the law of duress. As support for his contention, Appellant relies on the same testimony he used for his necessity argument. Duress is an affirmative defense that applies when an accused "engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another." *Id.* § 8.05(a) (Vernon 1994). Appellant argues that his past history with Shepard was sufficient to require inclusion of an instruction concerning duress. However, we find no evidence that Shepard threatened Appellant with imminent death or serious bodily injury if he did not drive over the speed limit, drive over curbs, pass trucks by veering into the oncoming lanes of traffic, or run red lights. In fact, according to Appellant's testimony, Shepard was motioning for Appellant to pull over. Therefore, we hold there is no evidence of a threat to warrant the inclu-

sion of a jury instruction on the law of duress. We overrule Appellant's sixth point.

### C. NEGLIGENT HOMICIDE

Count one of the indictment charged Appellant with intoxication manslaughter. *See id.* § 49.08 (Vernon Supp. 2001). Count two of the indictment charged involuntary manslaughter. *See id.* § 19.04 (Vernon 1994); *Dowden v. State,* 758 S.W.2d 264, 271 (Tex.Crim.App. 1988) (holding a person commits an act of involuntary manslaughter if he recklessly causes the death of an individual). At the close of the evidence, the State waived the involuntary manslaughter count. Appellant then requested a jury instruction on criminally negligent homicide, which the trial court overruled.

Appellant contends in his seventh point that the trial court erred in refusing to include a jury instruction on criminally negligent homicide. Appellant concedes that criminally negligent homicide is not a lesser-included offense of intoxication manslaughter. However, Appellant argues that the State waited too long to waive the count of involuntary manslaughter, of which criminally negligent homicide *is* a lesser-included offense. *See Saunders v. State,* 913 S.W.2d 564, 572 (Tex.Crim.App. 1995). Appellant contends the State's belated waiver was intended to prevent him from being entitled to an instruction on the lesser-included offense of criminally negligent homicide. Appellant's argument, in substance, is that the State should not be allowed to waive counts of the indictment to avoid jury instructions on lesser-included offenses that are raised by the evidence.

The court of criminal appeals has held that involuntary manslaughter and intoxication manslaughter are the same offense for purposes of double jeopardy and con-

victing an accused of both violates the Double Jeopardy Clause. *Ervin v. State,* 991 S.W.2d 804, 817 (Tex.Crim.App.1999). Therefore, Appellant could not have been convicted for both intoxication manslaughter and involuntary manslaughter arising from the same state of facts. This appears to be the rationale for the State's waiver of the involuntary manslaughter count. When Appellant asked the State to clarify whether it waived the manslaughter count, the State expressly stated "upon research of the law, we have found out that the jury can either choose one or the other but not both, and we feel that intoxication manslaughter is the most appropriate count here."

The general rule is that the State may, with the consent of the court, dismiss, waive, or abandon a portion of the indictment. *Ex parte Preston,* 833 S.W.2d 515, 517 (Tex.Crim.App.1992); *Woods v. State,* 152 Tex.Crim. 131, 211 S.W.2d 210, 211 (1948); *see also Wallace v. State,* 145 Tex.Crim. 625, 170 S.W.2d 762, 764 (1943). The only limitation on the State's right appears to be that if the dismissal, waiver, or abandonment occurs after jeopardy attaches, the State is barred from later litigating those allegations. *Ex parte Preston,* 833 S.W.2d at 517; *McElwee v. State,* 589 S.W.2d 455, 460 (Tex.Crim.App.1979).

Because the State was barred from convicting Appellant for both intoxication manslaughter and involuntary manslaughter, and because the only apparent limitation on the State's ability to waive counts of the indictment is that double jeopardy bars reprosecution of any counts waived after jeopardy attaches, we hold the State appropriately waived the involuntary manslaughter count. There is no indication in the record to support Appellant's contention that the State waived this count when it did in order to deny Appellant an instruction on the lesser-included offense of

criminally negligent homicide. Nor do we accept Appellant's novel argument that he was entitled to a charge on a lesser-included offense as to any count alleged in the indictment, regardless of whether the State abandoned that count.

Moreover, the State's motive for abandoning a count of the indictment is immaterial to our disposition of Appellant's point. Instead, we are bound by the *Royster* test to determine whether the refusal to submit the charge on the lesser-included offense was error. In *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App. [Panel Op.] 1981) (op. on reh'g), the plurality of the court of criminal appeals set out the two-pronged analysis for determining when a charge on a lesser-included offense is required: "First, the lesser included offense must be included within the proof necessary to establish the offense charged. Secondly, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense." The *Royster* test was ultimately adopted by the majority of the court in *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim.App. 1985).

■ Courts have explained, however, that because criminally negligent homicide requires proof of a mental state, which intoxication manslaughter, as a strict liability crime, does not require, the two offenses require proof of different facts. *See Gowans v. State*, 995 S.W.2d 787, 793 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd); *Reidweg v. State*, 981 S.W.2d 399, 406 (Tex.App.—San Antonio 1998, no pet.); *see also* TEX.PENAL CODE ANN. §§ 49.08; 49.11 (Vernon Supp.2001); *Still v. State*, 709 S.W.2d 658, 660 (Tex.Crim.App.1986) (explaining that "[t]he key to the existence of

criminal negligence is the failure of the actor to perceive the risk."). Therefore, criminally negligent homicide cannot be a lesser-included offense of intoxication manslaughter. *Gowans*, 995 S.W.2d at 793; *Reidweg*, 981 S.W.2d at 406. Therefore, we hold the trial court did not err in refusing to instruct the jury on the law of criminally negligent homicide. We overrule Appellant's seventh point.

## VIII. INSTRUCTED VERDICT

■ In his ninth point, Appellant alleges the trial court erred in denying his motion for an instructed verdict. A challenge to the denial of a motion for an instructed verdict is actually a challenge to the legal sufficiency of the evidence.[2] *See Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App.1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991); *Thornton v. State*, 994 S.W.2d 845, 849 (Tex.App.—Fort Worth 1999, pet. ref'd). In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied*, 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim.App.1991).

---

**2.** Appellant contends that the evidence was both legally and factually insufficient. However, Appellant has provided no legal authority or argument for his factual insufficiency claim. Therefore, we will review his instructed verdict complaint only under the traditional legal sufficiency standard.

■ Appellant was charged with intoxication manslaughter, which requires proof that he operated a motor vehicle in a public place and by reason of intoxication killed Woods. *See* Tex.Penal Code Ann. § 49.08. There is ample evidence that Appellant committed this offense. Shepard testified to following Appellant on public streets, and two truck drivers testified that they witnessed Appellant drive into oncoming lanes of traffic, run a red light, and hit Woods. Furthermore, the State presented the testimony of the medical examiner who conducted the autopsy on Woods. The medical examiner explained that Woods's injuries were consistent with a car accident.

Appellant challenges the evidence to prove that his intoxication caused Woods's death. Appellant cites *Moynahan v. State,* 140 Tex.Crim. 540, 146 S.W.2d 376 (1941), for the proposition that the State must show that a sober man in Appellant's position would have driven differently than Appellant. The State presented the testimony of Heartsill who testified that Appellant had a high level of cocaine in his system at the time of the accident. Heartsill explained further that that level of cocaine would cause an individual to act euphorically and drive erratically by driving over curbs and disregarding traffic signals, which corresponded to Appellant's behavior.

Appellant argues that he was not driving erratically because he was intoxicated, but because he was being chased by Shepard. Appellant testified that he first began to become suspicious of Shepard when he saw Shepard in his rearview mirror while Appellant was parked in the middle of the street talking to a friend. Appellant stated that he believed Shepard was a police officer because of the truck Shepard was driving and the fact he was talking on a cell phone. When Appellant made a U-turn to go back to pay for the gas and passed Shepard, Appellant said he recognized Shepard and began to think that Shepard was following him because of a fight they had had a few years earlier. Appellant also testified, however, that, while he was not high when he was driving, smoking cocaine causes a person to be nervous and paranoid.

According to Shepard, he observed Appellant act and drive erratically before the time Appellant testified he believed Shepard began to follow him. Before Shepard saw Appellant at the gas station, he observed Appellant pass him, nearly rear-end another car, and run two red lights on either side of a highway underpass. Shepard then witnessed Appellant dancing to loud music at the gas station, after which he jumped the curb and drove down the embankment to the road. Based upon Heartsill's testimony that Appellant's actions were consistent with cocaine intoxication, together with the evidence as to all of Appellant's behavior that occurred *prior to* his behavior of speeding and running red lights that he claimed was because he was being chased by Shepard, a rational jury could have found that Appellant's erratic driving, which resulted in the death of Woods, was caused by his intoxication due to cocaine. Therefore, we hold the evidence was legally sufficient to support the jury's finding on this issue and the trial court did not err in refusing to grant Appellant's motion for an instructed verdict. Appellant's ninth point is overruled.

## IX. CONCLUSION

Having overruled Appellant's points on appeal, we affirm the trial court's judgment.