NO. 07-01-0126-CR


NO. 07-01-0127-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JUNE 28, 2002



______________________________




BRANDY DEEVON TUCKER, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;



NOS. 38,078-A & 38,079-A; HONORABLE DAVID GLEASON, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 Pursuant to plea bargain agreements, appellant Brandy DeeVon Tucker was convicted
of possession of a controlled substance on September 4, 1997, and punishment was assessed
at six years confinement in cause number 38,078-A, and six years confinement and a $1,500
fine in cause number 38,079-A. The sentences were suspended and appellant was placed on
community supervision for six years. Upon the State's motion to revoke for violations of the
conditions of community supervision, appellant's term of community supervision was extended
by two years and the conditions thereto were amended. On April 17, 2000, upon hearing
evidence that appellant had again violated the conditions of community supervision, the trial
court signed revocation orders and imposed the original punishment for each offense. 
Appellant filed general notices of appeal from both judgments. In presenting this appeal,
counsel has filed an Anders (1) brief in support of a motion to withdraw. Based upon the rationale
expressed herein, the appeal is dismissed for want of jurisdiction.

 In support of his motion to withdraw, counsel has certified that he has diligently reviewed
the record and, in his opinion, the record reflects no reversible error or grounds upon which an
appeal can be predicated. Anders v. California, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18
L.Ed.2d 493 (1967); Monroe v. State, 671 S.W.2d 583, 585 (Tex.App.--San Antonio 1984, no
pet.). Thus, he concludes the appeal is frivolous and without merit. In compliance with High
v. State, 573 S.W.2d 807, 813 (Tex.Cr.App. 1978), counsel has candidly discussed why, under
the controlling authorities, there is no error in the court's judgment. Counsel has also shown
that he sent a copy of the brief to appellant, and informed appellant that, in counsel's view, the
appeal is without merit. In addition, counsel has demonstrated that he notified appellant of her
right to review the record and file a pro se brief if she desired to do so. Appellant did not file
a pro se brief nor did the State favor us with a brief.

 Appellate jurisdiction is invoked by filing a timely and proper notice of appeal. See State
v. Riewe, 13 S.W3d 408, 410 (Tex.Cr.App. 2000). To perfect an appeal from a judgment that
was rendered on a defendant's guilty plea and in which the punishment assessed did not
exceed the punishment recommended by the prosecutor and agreed to by the defendant, a
notice of appeal must (a) specify that the appeal is for a jurisdictional defect; (b) specify that
the substance of the appeal was raised by written motion and ruled on before trial; or (c) state
that the trial court granted permission to appeal. Tex. R. App. P. 25.2(b)(3); see also White v.
State, 61 S.W.3d 424, 428-29 (Tex.Cr.App. 2001) (holding that the notice requirements set
forth in Rule 25.2(b)(3) should be interpreted according to their plain meaning and that failing
to meet the requirements fails to invoke the jurisdiction of an appellate court); see also Vidaurri
v. State, 49 S.W.3d 880, 884 (Tex.Cr.App. 2001) (holding that the notice of appeal limitations
of Rule 25.2(b)(3) apply to an appeal from a conviction rendered on a guilty plea with agreed
punishment). 

 Appellant's notices of appeal do not contain any of the requirements set forth in Rule
25.2(b)(3) necessary to invoke this Court's jurisdiction over the convictions. Thus, our
jurisdiction has not been invoked and the appeals must be dismissed. Accordingly, the appeals
are dismissed for want of jurisdiction and we are without jurisdiction to rule on counsel's motion
to withdraw.


 Don H. Reavis

 Justice



Do not publish. 

 
1. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).



lly, appellant refers
to State's Exhibits 31 and 32, two recordings in which he provides his version of the events
of April 22, 2001 to the police. Appellant's brief represents that, in these tapes, he
"repeatedly stated that he didn't believe he killed the child." If these audiotaped statements
provided evidence that appellant committed an offense and supported only the offense of
injury to a child, the inclusion of the lesser included offense in the jury charge would have
been warranted. However, having reviewed State's Exhibits 31 and 32, we do not find that
appellant at any point stated he didn't believe he killed the child. Appellant's statements
recorded on those exhibits contain no acknowledgment of any action on his part that might
have resulted in either the injuries to N.T. or the child's death. A defendant's testimony that
he committed no offense, or testimony which otherwise shows that no offense occurred at
all, is not adequate to raise the issue of a lesser included offense. Lofton v. State, 45
S.W.3d 649, 652 (Tex.Crim.App. 2001). 

 Appellant next refers us to State's Exhibits 33 and 34, also audiotaped statements
to the police, in which appellant, according to his brief, "tells how he slipped and fell with
the child to the floor on the date of the incident and how he didn't think he injured the child
then, but he wasn't for sure. He also talks about an incident the day before the child's
death where the child blew out of the back door of the residence in a high wind, fell from
the porch and injured himself. Finally, in State's Exhibit 34, [appellant] relates in detail
falling in the kitchen with the child and the child's head hitting the floor." We presume
appellant points the court to these statements as alternative causes for the fatal injuries to
N.T. However, if each of these described incidents were true and were the causes of the
fatal injuries to N.T., appellant would have been guilty of no offense at all. (3) As noted, "if a
defendant either presents evidence that he committed no offense or presents no evidence,
and there is no evidence otherwise showing that he is guilty only of a lesser- included
offense, then a charge on a lesser-included offense is not required." Bignall v. State, 887
S.W.2d 21, 23 (Tex.Crim.App. 1994).

 Without referring us to specific evidence, (4) appellant next argues the medical
evidence presented at trial shows injuries which could have been inflicted with the intent
only to cause serious bodily injury. Citing Schweinle v. State, 915 S.W.2d 17, 19
(Tex.Crim.App. 1996) and Saunders v. State, 840 S.W.2d 390, 391 (Tex.Crim.App. 1992),
appellant contends the evidence is subject to the interpretation that the injuries to N.T. were
inflicted with the intent to cause serious bodily injury rather than death. We disagree. 

 Medical evidence included the testimony of Dr. Rodney Tucay, the forensic
pathologist who performed the autopsy on N.T. He testified that N.T. had 37 separate
injuries to the outside of his body, some of which were older than others. There were
several areas of hemorrhage inside N.T.'s brain. There was also an injury in N.T.'s
abdominal area to the mesentery fasc. Dr. Tucay testified he would not expect to see head
injuries like N.T.'s from an accidental fall from three feet and that the injuries were more
consistent with a fall from two or three stories high. (5) Tucay testified it was very rare to find
injuries to a child's mesentery fasc like that suffered by N.T. He said such an injury is not
consistent with a fall but with being hit with a blunt object with tremendous force in the
stomach. The head injuries to N.T. were recent. Tucay testified:

 I will be able to say that in most probability these injuries were not caused by
accidents, because of the multiplicity of the injuries on the right side of the
head, on the left side of the head, on the forehead, and on the back of the
head. If a person would have fallen, you would have- you would expect
injury concentrating on the point of impact and inside the brain, but if you
have injuries all over the body, that- it's difficult for me to think that it would
be an accident.


Dr. Tucay opined the cause of death of N.T. was blunt force injuries to the head and
suggested the manner of death was homicide.

 The State also presented Dr. Eric Levy, N.T.'s treating physician at Northwest Texas
Hospital. At the time of his testimony, Dr. Levy was also serving on the Panhandle Child
Fatality Review Team and the Texas State Child Fatality Review Team. Dr. Levy testified
he had been involved in hundreds of cases in which a child sustained serious head injuries,
but never a case in which a child received fatal head injuries from a fall of three feet. Dr.
Levy also testified that, even from a fall of six feet or so, it would be exceedingly rare to
receive fatal head injuries. Levy testified when he examined N.T. on April 22, 2001:

 He had a geometric pattern of bruises of varying ages, both on the right and
the left side of his face. He had bruises throughout his scalp. He had
bruises on the left side of his groin. He had multiple bruises over his arms
and legs of varying ages. And I put three plus, meaning extensive bruising
over the entire lower back. And he had some agonal respirations, which are
terminal respirations. It's the type of respiratory pattern that we humans do
before we die. And he had occasional what we call decerebrate posturing,
which is that type of extension that we do, again, consistent with a severe
head injury prior to death. 

 

Dr. Levy testified that N.T. had been severely traumatized and that the history given
medical personnel (i.e., N.T. falling between the couch and a speaker) was not consistent
with N.T.'s condition because he had "severe, lethal, extensive injuries that could not have
occurred in the manner that was told to the health care professionals." He further indicated
that N.T. suffered from violent, focused, and repeated trauma which would have
incapacitated N.T. immediately. 

 Dr. Guileyardo, also a forensic pathologist, was asked by the State to review the
evidence in this case and to testify during trial. During trial, Guileyardo testified that the
cause of N.T.'s death was blunt force injuries. He stated the injuries sustained by N.T.
would be consistent with a large man hitting a 25 pound child with his hand or fist, slamming
the child's head against a blunt object or surface, and striking the child on the head with a
blunt object. Guileyardo indicated the injuries would not be consistent with an accidental
fall in the home because of the multiple impact sites in several areas which were all severe. 
He indicated the injuries to the intestines would not be seen in any type of fall or bumping
into an object but are, instead, the result of a deep squeezing of the tissues against the
spine. Guileyardo further testified that with a blow that is going to cause death, the child is
going to look abnormal within a very few minutes. 

 There must be affirmative evidence in the record raising the lesser offense before an
instruction is warranted. Bignall, 887 S.W.2d at 24. It is not enough that the jury may
disbelieve crucial evidence pertaining to the greater offense. Skinner v. State, 956 S.W.2d
532, 543 (Tex.Crim.App. 1997), cert. denied, 523 U.S. 1079 (1998). We cannot agree with
appellant that the medical evidence in this case is subject to an interpretation like that in
Saunders or that based on the defendant's testimony in Schweinle. Schweinle, 915 S.W.2d
at 20; Saunders, 840 S.W.2d at 392. We see nothing in the evidence relied upon by
appellant that affirmatively suggests the horrific injuries to N.T. were inflicted with an intent
only to cause serious bodily injury rather than death. Like the court in Paz, we find no
evidence that would warrant a charge on the lesser included offense of injury to a child. (6) 
Paz, 44 S.W.3d at 101. Accordingly, we find the trial court did not err in refusing to so
charge the jury, Lofton, 45 S.W.3d at 652; Bignall, 887 S.W.2d at 23, and overrule
appellant's third issue.

 In his first issue on appeal, appellant contends the trial court committed reversible
error in refusing to submit the charge of injury to a child to the jury as set forth in count two
of the indictment even though the trial court never gave the State consent to abandon or
dismiss the count. In support of his proposition, appellant refers this court to several cases. 
See Ex Parte Preston, 833 S.W.2d 515, 517 (Tex.Crim.App. 1992); Woods v. State, 211
S.W.2d 210, 211 (Tex.Crim.App. 1948); Jackson v. State, 50 S.W.3d 579, 596
(Tex.App.-Fort Worth 2001, pet. ref'd); Brown v. State, 900 S.W.2d 805, 807-08
(Tex.App.-San Antonio 1995, pet. ref'd); Foster v. State, 661 S.W.2d 205, 209
(Tex.App.-Houston [1st Dist.] 1983, pet. ref'd). However, we agree with the State that the
cases cited by appellant, with the exception of Woods, (7) consider the abandonment of a
portion of an indictment in the context of double jeopardy. Here, double jeopardy is
inapplicable because the State is not now attempting to prosecute appellant for the offense
of injury to a child. Thus, appellant's claim is not ripe for review. (8) Burks v. State, 876
S.W.2d 877, 889 (Tex.Crim.App. 1994), cert. denied, 513 U.S. 1114 (1995); Keith v. State,
782 S.W.2d 861, 864 (Tex.Crim.App. 1989). We therefore overrule appellant's first issue. 

 Our disposition of appellant's third and first issues disposes of his second issue as
well, and it is overruled. We therefore affirm the judgment of the trial court. 


 James T. Campbell

 Justice 





Do not publish.
1. The State did not seek the death penalty.
2. The State argues appellant has not preserved for appeal the complaints raised in
his three issues. We do not reach that argument. 
3. 
 ' 
 
 ' 
 
4. ' 
 
5. 
 
 
6. 
 
 
 
7. 
 
 
 
8. We note also that the court in Jackson rejected a theory similar to that asserted in
appellant's first issue. 50 S.W.3d at 597.