NO. 12-01-00255-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


MICHAEL SANDERS,
§
 APPEAL FROM THE SEVENTH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

PER CURIAM


 Michael Sanders was convicted by a jury of burglary of a habitation. The trial court
sentenced him to twenty years of imprisonment. In three issues, Appellant asserts the trial court
erred in denying his motion for instructed verdict, the evidence is insufficient to support the
conviction, and the trial court erred by including the law of parties in the jury charge. Because we
agree the evidence does not support the conviction, we reverse the trial court's judgment and render
a judgment of acquittal.

 J. C. Johnson owns rental property, which he frequently drives by to check. On the morning
of July 17, 2000, he noticed that the window air conditioning unit was missing from one of the
houses. He went in the house, which was furnished but unoccupied at the time, and determined that
many items were missing.

 That afternoon, while he was sitting in his truck near the house waiting for his wife to arrive,
a small grayish-tan pickup with a large dent in the side backed up to the front door of the house. 
Two black males, one "heavy-set, kind of stocky built" and the other slim, got out of the truck. One
of them tried, without success, to open the doors of the house. Mr. Johnson went over to them and
asked what they were doing. One of them had his shirt open and Mr. Johnson could see the name
"Sanders" tattooed across the man's stomach. Appellant said his name was Fred Sanders and the
other man said his name was Charles Jones. They told Mr. Johnson that Willie Harris, who lived
at a particular address on Confederate Street, was paying them $80.00 to move furniture from that
house. After answering Mr. Johnson's questions, and without ever going into the house, they got
back in the truck and drove away. Mr. Johnson wrote down the license number of the truck and
called police.

 Carl Petty, Jr. rents one of the houses owned by Mr. Johnson. He came home at about 6:30
a.m. on July 17, 2000. He noticed a small, tan or gray pickup, with a large dent on the side, backed
up to the door of one of Mr. Johnson's houses. Two black men were taking furniture out of the
house and putting it in the truck. Mr. Petty said one of them was heavy and the other was slim, but
he did not get close enough to identify them. One of the men asked Mr. Petty if he wanted a job
moving furniture. He went in his house after sitting on his porch a few minutes. When he came
back out, the men and truck were gone. Later that afternoon, Mr. Petty saw Mr. Johnson and told
him about what he had seen that morning. However, he had not seen the truck or men that were at
the house that afternoon and was unable to pick any suspects out of a photo line-up. Further, he
testified that he was not certain of the color of the truck and did not know if the one he saw and the
one that was at the house in the afternoon were the same truck.

 When police ran the license plate number that Mr. Johnson provided, they learned that the
truck had been repossessed from the registered owner. However, the truck had been stopped the day
before the burglary, driven by Ronnie Lollar. Mr. Lollar spoke to police and gave them some
nicknames of possible suspects. When the investigating detective ran the nicknames through his
computer database, he found Appellant's name. In the meantime, Mr. Johnson looked through a
book of photos of possible suspects. He did not pick out Mr. Lollar, but he did pick out Appellant.

 None of the stolen items were ever recovered, and no fingerprints were found inside the
home. The house on Confederate Street was vacant and police never found a Willie Harris. 
Appellant was arrested about six months after the burglary. He gave a statement to police saying he
did not know anything about this case and he was out of town from August through October.

 In his first and second issues, Appellant asserts the trial court erred in denying his motion for
instructed verdict and the jury conviction cannot stand because the evidence is insufficient as a
matter of law. He argues that the State's evidence is merely circumstantial and speculative and the
State did not prove its case beyond a reasonable doubt.

 A challenge to the denial of a motion for an instructed verdict is actually a challenge to the
legal sufficiency of the evidence. Jackson v. State, 50 S.W.3d 579, 597 (Tex. App.-Fort Worth
2001, pet. ref'd). The standard for reviewing the legal sufficiency of the evidence is whether,
viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could
have found beyond a reasonable doubt the essential elements of the offense charged. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.2d 560 (1979). The trier of fact is the
sole judge of the weight and credibility of the witnesses and may believe or disbelieve any part of
any witness's testimony. Williams v. State, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). The jury
is entitled to draw reasonable inferences from the evidence. Benavides v. State, 763 S.W.2d 587,
588-89 (Tex. App.-Corpus Christi 1988, pet. ref'd). 

 The legal sufficiency of the evidence is a question of law. The issue on appeal is not whether
we as a court believe the State's evidence or believe that the defense's evidence outweighs the
State's evidence. See Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). Our duty is
not to reweigh the evidence from reading a cold record, but to act as a due process safeguard
ensuring only the rationality of the fact finder. Williams v. State, 937 S.W.2d 479, 483 (Tex. Crim.
App. 1996). The verdict may not be overturned unless it is irrational or unsupported by proof
beyond a reasonable doubt. Matson, 819 S.W.2d at 846.

 The evidence shows Mr. Johnson's house was burglarized at 6:30 a.m. on July 17, 2000, by
two unidentified black men in a small, tan or gray pickup with a dent in the side. It also shows that
Appellant and another black man were at, but not in, the house on the afternoon of July 17, 2000,
and that they arrived in a small, grayish-tan pickup with a dent in the side. The descriptions of the
truck seen in the morning and the one seen in the afternoon are similar enough that a trier of fact
might reasonably believe they described the same truck. However, the descriptions of the men who
took property from the house in the morning are so vague as to be unhelpful. 

 Mr. Johnson testified that the driver backed the truck up to the front door of the house and
one of the men tried to open first the front door and then the side door. Mr. Johnson explained that
the man walked to the side door like he knew where he was going. This testimony suggests that the
driver may have been to the house before and that the man trying the doors was familiar with the
house. However, Mr. Johnson never identified Appellant as the driver or the passenger and he never
stated if Appellant was the one who tried the doors. Moreover, Mr. Johnson's testimony does not
connect Appellant to the morning burglary. The record indicates Appellant weighs approximately
240 pounds, which would seem to rule out his being the "slim" man Mr. Johnson saw. More than
likely, Appellant is the man referred to by Mr. Johnson as "heavy set." However, the record does
not establish that he was the same "heavy" man that Mr. Petty saw burglarizing the house that
morning. 

 In short, there is no evidence that Appellant was the "heavy" man who burglarized the house
on the morning of July 17. Mr. Petty, who witnessed the morning burglary, was unable to identify
Appellant as being the man at the scene he described as "heavy." Further, he was unable to pick
Appellant out of a photo line-up. Certainly, Appellant's presence at the house that afternoon in a
truck matching the description of the morning burglars' vehicle is suspicious. But while there may
be a strong suspicion that Appellant did participate in the morning burglary, the evidence does not
show beyond a reasonable doubt that he did so. Even a strong suspicion of guilt is insufficient to
support a conviction. See Urbano v. State, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992).
Accordingly, as the evidence is legally insufficient to support the conviction, we sustain Appellant's
first and second issues. Due to our disposition of these issues, we need not reach the third issue. See
Tex. R. App. P. 47.1.

 We reverse the trial court's judgment and render a judgment of acquittal.




Opinion delivered August 21, 2002.

Panel consisted of Worthen, J., and Griffith, J.

Gohmert, Jr., C.J., not participating


(DO NOT PUBLISH)