COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-151-CR

 

 

JUSTIN
SHANE JOHN                                                           APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM COUNTY CRIMINAL
COURT NO. 1 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








A jury convicted Appellant Justin Shane John of
assaultBfamily
violence and assessed a sentence of 365 days in the county jail and a $4,000
fine.  The trial court sentenced him accordingly.  Appellant brings two points, arguing that the
evidence is legally and factually insufficient to sustain a verdict of guilty
and that the trial court erred by admitting evidence of prior convictions during
the guilt phase because they were too remote in time and Athe
probative value of their admission outweighed the prejudicial value [sic].@  Because the evidence is legally and factually
sufficient to support the verdict, the prior offenses were not too remote, and
Appellant did not preserve his remaining complaints about the admission of his
prior offenses, we affirm the trial court=s
judgment.

After she separated from her husband, the
complainant, Wendy, dated Appellant for approximately eighteen months.  Wendy and Appellant lived together for about
one year during that time.  About three
months after Wendy and Appellant stopped dating, she ran into him outside her
home after she had visited with her husband and children at her mother=s
home.  Appellant became angry, and he and
Wendy began arguing.  Wendy testified that
when she began to walk away, Appellant grabbed her from behind with his hands
around her neck.  She testified that he
would not allow her to leave.  She
testified that Appellant grabbed her face and tried to make her look at him or
talk to him.  She testified that
Appellant punched her in the chest, knocking the breath out of her, and that he
hit her in the face.  Finally, they both
started crying, and Wendy went into her house. 
Afterward, bruising was visible on Wendy=s body.








Wendy did not report the assault until three days
later.  Her husband had told her before
the assault that if he saw bruises on her again and if she continued her
abusive relationship with Appellant, he would take the children away from
her.  Wendy=s family
was in agreement with the husband on this point.

When Wendy went to the police department, she
sought a restraining order against Appellant, but it was not her intention to
seek criminal prosecution.  The police
took pictures of Wendy=s bruises, and as a result,
Appellant was subsequently prosecuted for assaultBfamily
violence.  Wendy apologized to Appellant for
the prosecution and told him that she did not want to see anything happen to
him.  She did not want to be at Appellant=s trial.

Appellant=s view
of the events was slightly different.  He
testified that Wendy came over to his house on the evening in question at
around 10:00 or 10:30 p.m.  Although she
denied it, he testified that the two spent the night together and that Wendy
did not leave his house until 5:00 or 6:00 a.m. the next morning.  He denied that he had hit or choked Wendy or
had caused any of her bruises, and he testified that she was not injured when
she left his house.  Later, Appellant testified
that Wendy sent him a text message apologizing and telling him that she did not
mean for Athat@ to
happen.  Appellant was arrested soon
thereafter.








In a single point, Appellant challenges both the
legal and factual sufficiency of the evidence to support the jury=s
verdict.[2]  In reviewing the legal sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution to determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt.[3]  Appellant does not challenge the fact that he
and Wendy were in a dating relationship; he challenges only the evidence of the
assault.          Section 22.01(a)(1) of the penal code provides that a person
commits assault if he Aintentionally, knowingly, or
recklessly causes bodily injury to another, including [his] spouse.@[4] A>Bodily
injury= means
physical pain, illness, or any impairment of physical condition.@[5] 








At trial, Wendy testified that Appellant grabbed
her around the neck with his hands, grabbed her face, punched her in the chest
with his fist so that the breath was knocked out of her, and hit her face hard
enough to cause a black eye.  She
testified that when Appellant grabbed her face, it hurt and caused her
pain.  She also testified that when
Appellant choked her, held her face, and struck her, she suffered pain.

A police officer testified that the injuries he
observed on Wendy were consistent with what she had described to him, and
photographs in evidence depict Wendy=s
bruising that she testified was a result of Appellant=s
assaulting her.

Appellant argues that the evidence is
insufficient because Wendy=s  testimony was not credible.  As evidence of her lack of credibility, he
points to the fact that she did not report the purported assault to the police
for three days after she claimed it had occurred and that she apologized to him
afterward. He argues that she went to the police only after her husband
threatened to take the children away if she did not end her relationship with
Appellant.  Wendy did testify that she
only intended to get a restraining order when she went to the police and that
she did not intend that Appellant be prosecuted.  Appellant also points to his testimony that
he did not assault Wendy on the evening in question.  He argues that because his version of the
facts and Wendy=s differed so completely, her
testimony cannot be sufficient.








The jury is the sole judge of the credibility of
the witnesses and the weight to be given to their testimony.[6]  As trier of fact, the jury could choose to
believe Wendy or to believe Appellant. 
Apparently, the jury determined that Wendy was the more credible of the
two.[7]  Viewing all the evidence in the light most
favorable to the prosecution, we hold that the evidence is legally sufficient
to support the jury=s verdict.

In support of his factual insufficiency claim,
Appellant contends that  Wendy=s
failure to report the purported assault until three days after she claimed that
it happened and the fact that she went to the police in response to her husband=s threat
to take the children away defeated her testimony, rendering it not
credible.  








We note that there was some evidence that
Appellant and Wendy both had a motive to lieCAppellant
did not want to go to jail, and Wendy did not want to lose her children.  Additionally, Appellant=s
credibility was impeached, to whatever degree, by evidence of two prior felony
convictions.  But again, as sole judge of
the credibility of the witnesses and the weight to be given to their testimony,[8]
the jury chose to believe Wendy=s
version of events.  The photographs of
the bruises and black eye show that Wendy was injured, and the officer=s
testimony corroborates her testimony. 
Applying the appropriate standard of review,[9]
we hold that the jury=s verdict is not so against the
great weight and preponderance of the evidence as to render the jury=s
verdict manifestly unjust.[10]  We therefore hold that the evidence is
factually sufficient to support the jury=s
verdict.  We overrule Appellant=s first
point.

In a multifarious complaint, Appellant appears to
argue in his second point that the trial court reversibly erred by admitting
evidence of his prior failure to identify conviction, three misdemeanor theft
convictions, and two felony convictions during the guilt phase and also seems
to suggest charge error.  








To preserve a complaint for our review, a party
must have presented to the trial court a timely request, objection, or motion
that states the specific grounds for the desired ruling if they are not
apparent from the context of the request, objection, or motion.[11]  Further, the trial court must have ruled on
the request, objection, or motion, either expressly or implicitly, or the
complaining party must have objected to the trial court=s
refusal to rule.[12]

When Appellant took the witness stand, the
prosecutor asked him if he had ever been convicted of failure to identify
himself to a police officer when he was a fugitive from justice.  Defense counsel objected, and the trial court
heard the offer of proof and objection outside the presence of the jury.  The trial court sustained the objection.  The trial court instructed the jury to
disregard the question about the failure to identify conviction.  Appellant did not move for a mistrial; he
therefore received all the relief that he requested and preserved no complaint
for appellate review regarding his failure to identify conviction.[13]








In arguing against the admissibility of the
failure to identify evidence, defense counsel stated, AHe=s
admitted to the two felony convictions, and I believe they=re
entitled to that.@ 
The trial court noted that Athe
[d]efense is making no objection as to the two felonies.@  Appellant did not contradict the trial
court.  Before the jury, the State
offered evidence of Appellant=s
convictions for the felony offenses of possession of a controlled substance and
unauthorized use of a motor vehicle. 
Appellant did not object or raise a rule 403 complaint.  He therefore has not preserved such complaint
regarding the two felony convictions for appellate review.[14]  Further, to the extent that his remoteness objection
encompassed these two felonies, we hold that they were less than ten years old
and admissible.[15]

Appellant refers to three burglary of a vehicle
convictions.  He was not, however,
convicted of burglary, but, rather, pled guilty to and was convicted of theft
of less than $750 in each case.  We
therefore refer to these three cases as misdemeanor theft convictions.  We understand Appellant to argue that the
three 1993 misdemeanor thefts are too remote to satisfy the requirements of
Texas Rule of Evidence 609,[16]
although he candidly concedes that they are crimes of moral turpitude.








The theft offenses occurred in 1993 and were
adjudicated in 1995.  Appellant was
convicted of felony possession in 1999 and of unauthorized use of a motor
vehicle in 2003.  The trial on the
offense now before this court took place in 2008.  Appellant argues that because the 1993 thefts
or his release from confinement for those convictions occurred more than ten
years before the State offered the convictions into evidence at the trial on
this case, the theft convictions are too remote.  Appellant is only partially correct.  A conviction that would ordinarily be
considered too remote under rule 609(b) can be admitted for impeachment if the
trial court determines in the interest of justice that its probative value
substantially outweighs its prejudicial effect.[17]
Additionally, even though more than ten years have elapsed, a prior conviction
will not be too remote if the absence of the defendant=s
reformation is shown by evidence of an intervening conviction for a felony or
for a misdemeanor involving moral turpitude.[18]








Here, the trial court=s ruling
implicitly suggests a probative/prejudicial determination.  Further, Appellant=s 1999
and 2003 felony convictions are sufficient to insulate the 1993 offenses from a
remoteness objection.[19]  Applying the Theus test to this Ahe-said/she-said@
dispute,[20]
we therefore hold that the evidence of Appellant=s 1993
convictions was admissible under rule 609.

Regarding his apparent charge error complaint,
Appellant cites to no authority in support of his statement that the trial
court=s
failure to include a limiting instruction in the jury charge constitutes charge
error.[21]  We therefore do not consider it as a separate
complaint among those raised under his second point but instead as part of the
harm discussion.  We note, however, that
where no limiting instruction is requested when evidence is first admitted, it
is admitted for all purposes, and no subsequent limitation on the evidence by
means of a jury charge instruction is appropriate.[22]  We therefore overrule Appellant=s second
point.

 

 

 

 








Having overruled both of Appellant=s
points, we affirm the trial court=s
judgment.

 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  June 25, 2009











[1]See Tex. R. App. P. 47.4.





[2]See Laster v. State, 275 S.W.3d 512, 519
(Tex. Crim. App. 2009) (stating that A[c]ourts and litigants should not combine their
legal and factual sufficiency analyses@).





[3]Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007).





[4]Tex. Penal Code Ann. ' 22.01(a) (Vernon
Supp. 2008).





[5]Id. ' 1.07(8) (Vernon Supp.
2008).





[6]See Tex. Code Crim. Proc.
Ann. art. 38.04 (Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex.
Crim. App. 2008), cert. denied, 129 S. Ct. 2075 (2009).





[7]See Harvey v. State,
135 S.W.3d 712, 717 (Tex. App.CDallas 2003, no pet.).





[8]See Tex. Code Crim. Proc.
Ann. art. 38.04; Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App.
2002).





[9]See Neal v. State, 256 S.W.3d 264, 275 (Tex.
Crim. App. 2008), cert. denied, 129 S. Ct. 1037 (2009); Lancon v.
State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson v. State,
204 S.W.3d 404, 414B15, 417 (Tex. Crim. App.
2006); Johnson v. State, 23 S.W.3d 1, 8B9, 12 (Tex. Crim. App.
2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).





[10]See Meraz v. State, 785 S.W.2d 146, 155
(Tex. Crim. App. 1990).





[11]Tex. R. App. P.
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998)
(op. on reh=g), cert. denied, 526
U.S. 1070 (1999).





[12]Tex. R. App. P.
33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).





[13]See Cruz v. State, 225 S.W.3d 546, 548
(Tex. Crim. App. 2007) (stating that only essential requirement to ensure
preservation is timely, specific request that is refused by trial
court).





[14]See Tex. R. App. P.
33.1(a)(1)(2); Mendez, 138 S.W.3d at 341; Mosley, 983 S.W.2d at
265.





[15]See Tex. R. Evid. 609.





[16]See id.





[17]Jackson v. State, 50 S.W.3d 579, 591
(Tex. App.CFort Worth 2001, pet. ref=d).





[18]Id.





[19]See id.





[20]See Theus v. State, 845 S.W.2d 874, 880B81 (Tex. Crim. App.
1992).





[21]See Tex. R. App. P. 38.1(I);
Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), cert.
denied, 532 U.S. 1053 (2001); Mosley, 983 S.W.2d at 256.





[22]Delgado v. State, 235 S.W.3d 244, 251
(Tex. Crim. App. 2007).