

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00505-CR

MARCOS ANTONIO CELIS                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

### FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Marcos Antonio Celis appeals his conviction for aggravated kidnapping. We affirm.

----

[1]*See* Tex. R. App. P. 47.4.

## Background Facts and Procedural History

Sherry Maldonado testified at Appellant's trial that she had a couple of vodka drinks before she started driving Valeria Torres and Valeria's boyfriend, Appellant, to the hospital to visit Valeria's brother. According to Sherry, Appellant—who was in the backseat with a sawed-off shotgun—ordered her to drive elsewhere, assaulted her when she refused, threatened to kill her, forced her car into "park" while she was driving at high speed, and discharged the shotgun through the windshield after she jumped out of the car.

Valeria testified that she had asked Sherry for a ride to the hospital because she was sick. She testified that Appellant was also sick and that he rode in Sherry's car in the back seat on the passenger side. Appellant told Sherry to drive to East Side, but Sherry refused. When Sherry turned into her driveway, Appellant threatened and hit her with the shotgun. Valeria also testified that Appellant and Sherry struggled, that Sherry lost control of the wheel, and that Valeria pulled the car over and put it in "park." She said that the gun discharged as Sherry and Appellant fought for it, putting a hole through the windshield. Valeria admitted that she had pled guilty to kidnapping Sherry.

Appellant denied that he kidnapped Sherry but admitted that he repeatedly struck her with his fist and the shotgun. He claimed he had to in order to avoid imminent harm because she was drunk, would not stop at the hospital, and was driving wildly and erratically. According to Appellant, he had to fight with Sherry to escape from the car that she was driving dangerously.

2

Sherry admitted that she had a drinking problem, had been drinking her whole life, still drank regularly, preferred vodka—which she bought by the half-gallon and kept on hand at home or in her car—and that she had a history of criminal convictions for DWI. Appellant had judgments admitted documenting prior DWIs Sherry committed going back to 1998.

The jury convicted Appellant of aggravated kidnapping, enhanced by a prior felony conviction, and assessed his punishment at twenty-five years' confinement. The trial court sentenced him accordingly.

### The Issues

In two points, Appellant contends that by prohibiting him from impeaching Sherry with evidence that she had seven prior felony convictions and two probation revocations the trial court abused its discretion under rule 609 of the Texas Rules of Evidence and denied him his due process, confrontation, and cross-examination rights under the Sixth and Fourteenth Amendments.

The record shows that Appellant offered the following defense exhibits in evidence:

Defense Exhibit 1: a judgment revoking probation imposed for an August 21, 1982 DWI, showing as grounds for the revocation a felony DWI repetition committed on February 24, 1988;

Defense Exhibit 2: a nunc pro tunc order dated August 9, 1988, indicating that Appellant was serving a prison sentence after having probation revoked as shown in Defense Exhibit 1;

Defense Exhibit 3: a judgment on a guilty plea for a DWI committed on February 24, 1988;

3

Defense Exhibit 4:  a judgment on a guilty plea ordering probation for a DWI committed on March 30, 1990;

Defense Exhibit 5:  a judgment revoking the probation shown in Defense Exhibit 4 for a subsequent DWI committed on August 4, 1991;

Defense Exhibit 6:  a judgment on a guilty plea imposing a two-year prison term for the August 4, 1991 DWI;

Defense Exhibit 7:  a judgment on a guilty plea imposing a three-year prison term for a DWI committed on October 30, 1992;

Defense Exhibit 8:  a judgment on a guilty plea imposing a four-year prison term for a DWI committed on March 12, 1994;

Defense Exhibit 9:  a judgment on a guilty plea ordering ten years' community supervision for a DWI committed on February 2, 1998;

Defense Exhibit 10:  a judgment on a nolo contendere plea ordering five years' community supervision for possession of cocaine committed on February 2, 1998;

Defense Exhibit 11:  a judgment revoking the community supervision shown in Defense Exhibit 10 for a subsequent DWI committed on March 31, 2002;

Defense Exhibit 12:  a judgment on a guilty plea ordering 83 days in jail for the DWI committed on March 31, 2002;

Defense Exhibit 13:  a judgment revoking community supervision shown in Defense Exhibit 9 for the March 31, 2002 DWI shown in Defense Exhibits 11 and 12.

The trial court admitted exhibits 11 through 13 but excluded exhibits 1 through 10, finding that their probative value did not outweigh their potential for prejudicial effect.  At trial and in his first point on appeal, Appellant relies on rule of evidence 609 to assert that the trial court abused its discretion by excluding these exhibits.

4

**The Trial Court Properly Excluded Remote Prior Convictions**

Rule 609 provides that evidence of prior crimes may be admitted against a witness only if the crime was a "felony or involved moral turpitude" and if not "more than [a period of] ten years has elapsed since the date of the conviction or of the release of the witness." Before the evidence may come in, its proponent must show the trial court that the probative value of the prior conviction "outweighs its prejudicial effect." *Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992); *see* Tex. R. Evid. 609(a).

The trial court determined that Defense Exhibits 1 through 10 were too remote and that their probative value would not outweigh their potential for prejudice. The trial court did, however, admit Defense Exhibits 11, 12, and 13. Appellant complained that by excluding the other exhibits the trial court denied his client "an opportunity to present a defense."

To the extent that Appellant's points concern the exclusion of Defense Exhibit No. 3—a judgment of misdemeanor DWI repetition—we overrule both points because DWI is not a crime of moral turpitude. *See Shipman v. State*, 604 S.W.2d 182, 184 (Tex. Crim. App. 1980).

As to the other exhibits that the trial court excluded, this court has recognized the court of criminal appeals' exception to rule 609's prohibition of remote convictions when an intervening conviction shows that the convicted person has not reformed the behavior that led to the prior convictions. *See Jackson v. State*, 50 S.W.3d 579, 591 (Tex. App.—Fort Worth 2001, pet. ref'd)

5

(citing *McClendon v. State*, 509 S.W.2d 851, 855–57 (Tex. Crim. App. 1974) (op. on reh'g)). But even under this exception, sometimes called the "tacking" doctrine, a trial court must determine whether the probative value of the convictions outweighs their prejudicial effect. *Hankins v. State*, 180 S.W.3d 177, 179 (Tex. App.—Austin 2005, pet. ref'd); *see Jackson*, 50 S.W.3d at 592. Here, because the trial court determined that the exhibits' probative value did not outweigh their potential for prejudice, we need not determine whether the tacking doctrine applies. What we do need to determine, however, is whether the record supports the trial court's determination that the exhibits' probative value did not outweigh any prejudicial effect.

In conducting a balancing test to determine whether the probative value of a defendant's prior convictions outweighs their prejudicial effect, the court of criminal appeals set out a list of nonexclusive factors in *Theus*, 845 S.W.2d at 880. Adapting these factors to prior convictions of a witness, we will consider (1) the prior convictions' impeachment value; (2) their temporal proximity to the incident at issue in the trial; (3) the similarity between the prior offenses and the present incident; (4) the importance of the complainant's testimony; and (5) the importance of the credibility issue. *See id*.; *see Jackson*, 50 S.W.3d at 592.

***Impeachment Value***

In *Theus*, the court of criminal appeals stated that "when a party seeks to impeach a witness with evidence of a crime that relates more to deception than not, the first factor weighs in favor of admission." *Theus*, 845 S.W.2d at 881. We

agree with the State that DWI is not a crime of deception, so its impeachment value is low.  The impeachment value of judgments showing a history of DWI convictions would be higher in this case if Sherry had denied that she had such a history, or if she had denied that she had been drinking.  But although Appellant claims in his brief that Sherry denied that she was intoxicated, our review of the record, particularly in the places cited by Appellant, does not support this claim.[2] Because DWI is not a crime of deception and because Sherry admitted she had a drinking problem that included a long history of DWI convictions, we hold that this factor weighs against admission.

***Temporal Proximity***

The court documents that Appellant complains the trial court erred by excluding date from the eighties and nineties.  But as the State points out, the trial court admitted the more recent convictions.  Moreover, Sherry admitted to a lifetime of drinking and to having a problem with it.  We agree with the State that the temporal proximity factor weighs against admitting the more remote judgments.

***Similarity***

Evidence that Sherry had prior convictions for DWI is similar to Appellant's claim that she was drinking while driving during the incident at issue in his trial. The court of criminal appeals weighs this factor against admission due to the

---

[2]An officer that Sherry ran up to after she got out of the car testified that Sherry was panicked, scared, and crying, but that she did not appear intoxicated.

7

potential that the remote DWIs could be considered more to prove a pattern of conduct than for impeachment purposes. *See id*. (citing *United States v. Jackson*, 627 F.2d 1198, 1210 (D.C. Cir. 1980); *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir.), *cert. denied*, 434 U.S. 867 (1977)).

### *Importance of the Witness's Testimony and Credibility*

Sherry testified that Appellant ordered her to drive to specific locations and threatened her with a shotgun. Appellant admitted striking Sherry with his fist and with the shotgun but denied kidnapping her. Had he and Sherry been the only eyewitnesses, Sherry's testimony and credibility would have been more important. But the importance of her testimony and credibility were mitigated because Valeria, Appellant's girlfriend at the time of the offense, corroborated Sherry's testimony that Appellant ordered her at gunpoint to drive as he directed, and although she agreed with him that Sherry was drunk and driving a little over the speed limit, she did not feel that the driving was dangerous enough to ask to be let out.

### *Application of the Five Factors*

In reviewing the trial court's weighing of these factors and its ruling on the admissibility of a prior conviction, "we must accord the trial court 'wide discretion.'" *Theus*, 845 S.W.2d at 881 (citing *United States v. Oaxaca*, 569 F.2d 518, 526 (9th Cir.), *cert. denied*, 439 U.S. 926 (1978)).

In *Theus*, the court of criminal appeals held that the trial court abused its discretion by admitting a prior conviction when its lack of impeachment value

8

overrode the other factors. *Id.* at 882. Here, as in *Theus*, we have held that Sherry's excluded prior convictions lack impeachment value. In addition, we have held that the temporal proximity and similarity factors weigh against admission. Weighing all these factors, we hold that the trial court acted within its discretion by excluding the exhibits. *See id.* Accordingly, we overrule the remainder of Appellant's first point.

### Constitutional Claims

In his second point, Appellant contends that the trial court denied him his due process and confrontation rights by limiting cross-examination of Sherry regarding her prior felony convictions. The State contends that Appellant's argument on appeal does not comport with his complaint at trial.

Appellant argued below that excluding the impeachment evidence to show the jury the full extent of Sherry's prior convictions prevented him from presenting a defense. Here, he argues that he was improperly denied his right to full cross-examination to reveal the full extent of Sherry's previous convictions and her motive to lie.

The constitutional right to present a defense includes the right to compulsory process and the rights to confront and cross-examine witnesses. *See Holmes v. State*, 323 S.W.3d 163, 173 (Tex. Crim. App. 2009) (op. on reh'g) (citing *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727 (2006)). Because the right to present a defense is a composite of several rights, Appellant's trial objection could have more precisely alerted the trial court to the

9

complaint he now presents on appeal. Nevertheless, we shall assume without deciding that the objection sufficiently encompassed the claims he now raises on appeal, that is, that he was denied his constitutional right to confront and cross-examine his accuser. Whether or not Appellant sufficiently preserved his claim, we need not address the merits because even if we were to hold that the claim was preserved and that the trial court erred by excluding evidence of the complainant's thirty-year history of DWI, the other evidence admitted at trial would compel us to hold that beyond a reasonable doubt the trial court's ruling did not affect the verdict.

Sherry's drinking was no secret to the jury. The State mentioned it in its opening statement. The trial court allowed Appellant to present to the jury judgments showing that she had prior DWI convictions for offenses going back to February 1998. Defense Exhibit 13 shows that Sherry was put on probation for a DWI–repetition offense committed on February 2, 1998. Defense Exhibit 11 shows that she also possessed cocaine on that date. Defense Exhibits 11 and 12 both show that Sherry had violated the terms of her probation by committing another DWI on March 31, 2002, which she pled guilty to. Further, after Sherry admitted that she had a drinking problem and a history of DWI convictions, Appellant had the opportunity to cross-examine her regarding that impeachment evidence. Consequently, after carefully reviewing the record and performing the required harm analysis under rule 44.2(a), we hold that beyond a reasonable doubt the trial court's error, if any, did not contribute to Appellant's conviction or

10

punishment. *See* Tex. R. App. P. 44.2(a). We therefore overrule the remainder of Appellant's second point.

## Conclusion

Having overruled Appellant's two points, we affirm the trial court's judgment.

LEE GABRIEL
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DAUPHINOT, J., filed a dissenting opinion.

PUBLISH

DELIVERED: May 24, 2012

11



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00505-CR

MARCOS ANTONIO CELIS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

----------

## DISSENTING OPINION[1]

----------

Appellant contends that the trial court abused its discretion under rule 609 of the Texas Rules of Evidence and denied him his rights of due process and of confrontation and cross-examination under the Sixth and Fourteenth Amendments by prohibiting his impeaching his accuser with seven prior felony convictions and two revocations of community supervision. Appellant's issue as framed was not addressed by the trial court or the majority in this court. Instead,

---

[1]*See* Tex. R. App. P. 47.4.

both the trial court and the majority have reframed his issue and addressed that reframed issue, which is not Appellant's issue, thereby denying Appellant his constitutional right to present his defense.  I must therefore respectfully dissent from the majority's opinion analyzing Appellant's issue as reframed by the State and the trial court rather than analyzing Appellant's issue as actually presented by Appellant both here and below.

The majority analyzes the arguments of the State and Appellant and the trial court's ruling under *Theus*[2] rather than under *Fielder*.[3]  In *Fielder*, the Texas Court of Criminal Appeals explained that "[t]he theory of the prosecution and the defensive theory or theories determine the 'material' issues in each individual case."[4]  Fielder raised a battered-wife defense.[5]  When she attempted to offer expert evidence in support of her defensive theory, her defense was recast by both the State and the trial court as traditional self-defense.  The Texas Court of Criminal Appeals explained,

> The trial judge told counsel he had tried to relate the evidence to the issue of whether the defendant had acted in protecting herself under Texas self defense law and found the evidence had "no relevance".  Thereafter, the testimony of an associate of Dr. Shupe,

---

[2]*Theus v. State*, 845 S.W.2d 874, 879 (Tex. Crim. App. 1992).

[3]*Fielder v. State*, 756 S.W.2d 309, 318 (Tex. Crim. App. 1988).

[4]*Id.*

[5]*Id.* at 317.

2

William A. Stacy, Ph.D., was excluded upon the State's objection that it was hearsay and irrelevant. [6]

The traditional self-defense analysis was a non-starter because Fielder had discovered her husband with his new girlfriend shortly before killing him by shooting him seven times when he was unarmed.[7]

In the instant case, Appellant couched his theory as impeaching Maldonado's ability accurately to recall and recount the events of the night in question that the State argued constituted kidnapping and offering evidence to support his necessity defense because of her reckless, intoxicated driving. Contrary to the State's and trial court's constructs, Appellant's theory of the case was not that Maldonado lacked credibility merely because she was a convicted criminal but, rather, because of her long history of substance abuse and driving recklessly while under the influence of intoxicants.

Appellant testified that he had eaten some bad food the night before the events in question, was ill, and had asked Maldonado to drive him to the hospital. His girlfriend, Torres, sat in the front seat of Maldonado's car. Appellant admitted that he carried his shotgun. According to Appellant, Maldonado was drinking heavily, had an opened bottle of vodka in the backseat of the car, and removed from her bra and threw away a crack pipe. Appellant claimed that instead of going to the hospital, Maldonado drove to her house to get more alcohol.

---

[6] *Id.*

[7] *See id.* at 310–12.

3

Appellant stated that he had fought with her because of his need to get Torres and himself out of her car safely and because, in her highly intoxicated state, Maldonado was acting wildly and erratically and driving dangerously.

Torres testified that she asked Maldonado for a ride to the hospital because she was sick. Torres confirmed that Appellant sat in the back seat of Maldonado's car on the passenger side and that he was also sick. Torres also testified that Appellant told Maldonado to drive to the East Side, but she refused. Torres testified that as Maldonado tried to turn onto the street where her house was located, Appellant had his gun out and threatened her. Torres also testified that Appellant had hit Maldonado with his gun. Torres testified that ultimately, Appellant and Maldonado struggled, Maldonado lost control of the wheel, and Torres pulled the car over and put it in "Park." Torres testified that the gun went off as Maldonado and Appellant fought for it, shooting a hole through the front windshield. Torres admitted that she had pled guilty to kidnapping Maldonado.

Appellant's theory of the case was that because of her intoxication and her history of substance-abuse convictions, Maldonado was not a reliable witness and that his version of the facts raising his necessity defense was rational in light of her long history of abusing alcohol and drugs while driving. Appellant, therefore, wanted the jury to know about Maldonado's many prior convictions for driving while intoxicated, a reasonable strategy in light of his necessity defense. The State, viewing Appellant's attempt to offer Maldonado's prior convictions as traditional impeachment, argued that most of the prior convictions were

4

inadmissible because they were more than ten years old. The trial court sustained the State's objections to all convictions more than ten years old, despite the tacking doctrine that clearly made them admissible even under traditional notions of impeachment.[8]

Appellant contends that the trial court erred by limiting cross-examination of Maldonado regarding prior felony convictions such that his right of due process and his right to confront and cross-examine under the Sixth Amendment were denied. That is, the State and the trial court were allowed to recast his defense and in so doing denied him his right to put on his defense, just as Fielder was denied her right to put on her defense when her battered-wife defense was recast as traditional self-defense.

The *Fielder* court explained,

> [Fielder's] theory of the case was that she had suffered tortuous physical, emotional and sexual abuse at the hands of her husband; that this violent prior relationship convinced her he could and would kill her if she disclosed his sexual proclivities to anyone else; that on the night of the homicide, when she revealed she had discussed their relationship with an attorney, she tried to run away, but he pulled a firearm and indicated verbally he would make good on past threats to kill her; that because of her fear and belief he would kill her, when given the opportunity, she grabbed the gun and shot him to death.

> The State's theory was that [Fielder] was a competent professional woman who was madly in love with her husband; that even though Darwin went a bit too far in his sex "games", [she] willingly participated in and enjoyed most of them. Thus, [Fielder's]

---

[8]*See Lucas v. State*, 791 S.W.2d 35, 51 (Tex. Crim. App. 1989); *Jackson v. State*, 50 S.W.3d 579, 592 (Tex. App.—Fort Worth 2001, pet. ref'd).

5

prior relationship with Darwin did not produce in her a fear of him as she claimed, but rather, when she found out he was involved with another woman, she pulled a gun and shot her husband in a jealous rage.

Thus, of the four "condition of mind" issues which were raised by the parties' respective theories, the only one which was contested was the reasonableness of [Fielder's] apprehension of fear that Darwin was about to use deadly force against her at the time of his killing. This was the main contested issue in the case.

Viewed in this context and in light of the trial testimony as a whole, it is clear that the inference the State sought to have the jury draw from the questioned cross and re-cross-examination was that [Fielder], in fact, was *not afraid* of Darwin as a result of his violent acts during the marriage, or that her fear was not of a degree to warrant the inference that she reasonably believed he was going to kill her at the time of the shooting.

In order to establish her "fear" (apparent danger from her standpoint) at the time of the offense, [Fielder] produced past violent encounters with the deceased. This is an established method of proof in self-defense cases, because the law recognizes the fact that future conduct may be reasonably inferred from past conduct.[9]

In the instant case, Appellant argued below that excluding the impeachment evidence of Maldonado's convictions for continuous substance abuse prevented him from presenting a defense. Here, he argues that he was improperly denied his right for full cross-examination to reveal the full extent of Maldonado's intoxication and intoxicated, dangerous driving. There is no substantial difference between the complaint below and the complaint on appeal.

---

[9]*Fielder*, 756 S.W.2d at 319 (citation omitted).

6

In *Irby v. State*,[10] the Texas Court of Criminal Appeals, relying on decisions of the United States Supreme Court, explained,

> The constitutional right of confrontation includes the right to cross-examine the witnesses and the opportunity to show that a witness is biased or that his testimony is exaggerated or unbelievable. Nonetheless, the trial judge retains wide latitude to impose reasonable limits on such cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."[11]

The *Irby* court relied in part on *United States v. Abel*,[12] in which the United States Supreme Court held that evidence that both the bank robbery defendant and the defense witness belonged to the same prison gang, whose tenets required its members to lie, cheat, steal, and kill to protect each other, was admissible because it was probative of the defense witness's possible bias toward the defendant.[13] The *Irby* court also relied on *Delaware v. Van Arsdall*,[14] in which the United States Supreme Court held that it was error to prohibit any cross-examination of a State's witness concerning the possibility that he might be

---

[10]327 S.W.3d 138 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 904 (2011).

[11]*Id.* at 145 (citations omitted).

[12]469 U.S. 45, 105 S. Ct. 465 (1984).

[13]*Id.* at 49, 105 S. Ct. at 467.

[14]475 U.S. 673, 106 S. Ct. 1431 (1986).

7

biased in favor of the State because of dismissal of his pending public-drunkenness charge.[15]

The right to present a complete defense is rooted in the constitutional rights to due process under both the Fifth and Fourteenth Amendments to the United States Constitution; the right to due course of law under article one, section nineteen of the Texas Constitution; the Sixth Amendment right to confront and cross-examine witnesses; and the same right under article one, section ten of the Texas Constitution.[16]  The Texas Court of Criminal Appeals has reminded us of the importance of a defendant's being allowed to present a complete defense, stating,

> In *Holmes v. South Carolina*, the Supreme Court stated, "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"  In the case before us, the trial court's ruling disallowing cross-examination of the State's expert witness violated the defendant's fundamental rights to a fair trial.  The Supreme Court said in *Pointer v. Texas*:
>
>> There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.  Indeed, we have expressly declared that to deprive an accused of the right to cross-examine the witnesses

---

[15]*Id.* at 678–79, 106 S. Ct. at 1435.

[16]*See* U.S. Const. amends. V, VI, XIV; Tex. Const. art. I, §§ 10, 19.

8

against him is a denial of the Fourteenth Amendment's guarantee of due process of law.

Because the denial of the right to present a defense is a violation of due process and results in constitutional error, we now turn to the harm analysis.[17]

The trial court abused its discretion by refusing to admit evidence of Maldonado's prior convictions and revocations, Defense Exhibits 1, 4, 5, 6, 7, 8, 9, and 10. Because the trial court refused to admit the evidence upon which Appellant's entire defense was predicated, he was denied his due process right to present his defense. Constitutional error requires analysis under rule of appellate procedure 44.2(a).[18] The question is therefore whether the trial court's error was harmless beyond a reasonable doubt.[19] In applying the "harmless error" test, the primary issue is whether there is a "reasonable possibility" that the error might have contributed to the conviction.[20]

In determining constitutional harm, we must evaluate the entire record in a neutral, impartial, and even-handed manner, not "in the light most favorable to

---

[17]*Holmes v. State*, 323 S.W.3d 163, 173 (Tex. Crim. App. 2009) (op. on reh'g) (citations omitted).

[18]Tex. R. App. P. 44.2(a).

[19]*See Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997).

[20]*Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070 (1999).

the prosecution."[21]   The error here was exacerbated by the fact that the prior convictions involved substance abuse, and significant issues at trial were whether Maldonado was intoxicated, the degree of her intoxication, and its effect on her judgment and on her driving.  The remoteness of some of the convictions does not make them less probative.  Rather, they show that the duration of her addiction was long-term and severe.

The majority points out that when the State offered the evidence that had been excluded when Appellant offered it, the evidence was admitted. Consequently, the majority concludes that because that evidence was eventually admitted, the trial court's error, if any, did not contribute to Appellant's conviction. But the issue becomes whether the State may recast Appellant's defensive issues.  Appellant sought to present the evidence of the prior convictions to support his defense of necessity based on Maldonado's dangerous and intoxicated driving and to support his argument that Maldonado's intoxication and addiction prevented her ability accurately to recount the events of that night.  The State recast the issues as simple impeachment based on prior felony convictions and crimes of moral turpitude.

---

[21]*Harris v. State*, 790 S.W.2d 568, 586 (Tex. Crim. App. 1989), *disagreed with in part on other grounds by Snowden v. State*, 353 S.W.3d 815, 820–22 (Tex. Crim. App. 2011).

Because the majority does not analyze the issues in the context of Appellant's actual defensive theory but rather as a question of general admissibility of any prior conviction, I must respectfully dissent.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: May 24, 2012

11