COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00505-CR

 


 
 
 MARCOS ANTONIO CELIS
 
 
  
 
 
 APPELLANT
 
 
 
 
 V.
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 89th
District Court OF WICHITA COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Introduction

Appellant
Marcos Antonio Celis appeals his conviction for aggravated kidnapping.  We affirm.

Background
Facts and Procedural History

Sherry
Maldonado testified at Appellant’s trial that she had a couple of vodka drinks
before she started driving Valeria Torres and Valeria’s boyfriend, Appellant, to
the hospital to visit Valeria’s brother.  According to Sherry, Appellant––who
was in the backseat with a sawed-off shotgun––ordered her to drive elsewhere,
assaulted her when she refused, threatened to kill her, forced her car into “park”
while she was driving at high speed, and discharged the shotgun through the
windshield after she jumped out of the car.

Valeria
testified that she had asked Sherry for a ride to the hospital because she was
sick.  She testified that Appellant was also sick and that he rode in Sherry’s
car in the back seat on the passenger side.  Appellant told Sherry to drive to East
Side, but Sherry refused.  When Sherry turned into her driveway, Appellant
threatened and hit her with the shotgun.  Valeria also testified that Appellant
and Sherry struggled, that Sherry lost control of the wheel, and that Valeria
pulled the car over and put it in “park.”  She said that the gun discharged as Sherry
and Appellant fought for it, putting a hole through the windshield.  Valeria
admitted that she had pled guilty to kidnapping Sherry.

Appellant
denied that he kidnapped Sherry but admitted that he repeatedly struck her with
his fist and the shotgun.  He claimed he had to in order to avoid imminent harm
because she was drunk, would not stop at the hospital, and was driving wildly
and erratically.  According to Appellant, he had to fight with Sherry to escape
from the car that she was driving dangerously.

Sherry
admitted that she had a drinking problem, had been drinking her whole life,
still drank regularly, preferred vodka––which she bought by the half-gallon and
kept on hand at home or in her car––and that she had a history of criminal
convictions for DWI.  Appellant had judgments admitted documenting prior DWIs
Sherry committed going back to 1998.

The
jury convicted Appellant of aggravated kidnapping, enhanced by a prior felony
conviction, and assessed his punishment at twenty-five years’ confinement.  The
trial court sentenced him accordingly.

The
Issues

In
two points, Appellant contends that by prohibiting him from impeaching Sherry
with evidence that she had seven prior felony convictions and two probation
revocations the trial court abused its discretion under rule 609 of the Texas
Rules of Evidence and denied him his due process, confrontation, and
cross-examination rights under the Sixth and Fourteenth Amendments.

The
record shows that Appellant offered the following defense exhibits in evidence:

Defense Exhibit 1:  a
judgment revoking probation imposed for an August 21, 1982 DWI, showing as
grounds for the revocation a felony DWI repetition committed on February 24,
1988;

 

Defense Exhibit 2:  a
nunc pro tunc order dated August 9, 1988, indicating that Appellant was serving
a prison sentence after having probation revoked as shown in Defense Exhibit 1;

 

Defense Exhibit 3:  a
judgment on a guilty plea for a DWI committed on February 24, 1988;

 

Defense Exhibit 4:  a
judgment on a guilty plea ordering probation for a DWI committed on March 30,
1990;

 

Defense Exhibit 5:  a
judgment revoking the probation shown in Defense Exhibit 4 for a subsequent DWI
committed on August 4, 1991;

 

Defense Exhibit 6:  a
judgment on a guilty plea imposing a two-year prison term for the August 4,
1991 DWI;

 

Defense Exhibit 7:  a
judgment on a guilty plea imposing a three-year prison term for a DWI committed
on October 30, 1992;

 

Defense Exhibit 8:  a
judgment on a guilty plea imposing a four-year prison term for a DWI committed
on March 12, 1994;

 

Defense Exhibit 9:  a
judgment on a guilty plea ordering ten years’ community supervision for a DWI
committed on February 2, 1998;

 

Defense Exhibit 10:  a
judgment on a nolo contendere plea ordering five years’ community supervision for
possession of cocaine committed on February 2, 1998;

 

Defense Exhibit 11:  a
judgment revoking the community supervision shown in Defense Exhibit 10 for a
subsequent DWI committed on March 31, 2002;

 

Defense Exhibit 12:  a
judgment on a guilty plea ordering 83 days in jail for the DWI committed on March
31, 2002;

 

Defense Exhibit 13:  a
judgment revoking community supervision shown in Defense Exhibit 9 for the March
31, 2002 DWI shown in Defense Exhibits 11 and 12.

The
trial court admitted exhibits 11 through 13 but excluded exhibits 1 through 10,
finding that their probative value did not outweigh their potential for prejudicial
effect.  At trial and in his first point on appeal, Appellant relies on rule of
evidence 609 to assert that the trial court abused its discretion by excluding
these exhibits.

The
Trial Court Properly Excluded Remote Prior Convictions

Rule
609 provides that evidence of prior crimes may be admitted against a witness
only if the crime was a “felony or involved moral turpitude” and if not “more
than [a period of] ten years has elapsed since the date of the conviction or of
the release of the witness.”  Before the evidence may come in, its proponent
must show the trial court that the probative value of the prior conviction “outweighs
its prejudicial effect.”  Theus v. State, 845 S.W.2d 874, 880 (Tex.
Crim. App. 1992); see Tex. R. Evid. 609(a).

The
trial court determined that Defense Exhibits 1 through 10 were too remote and
that their probative value would not outweigh their potential for prejudice.  The
trial court did, however, admit Defense Exhibits 11, 12, and 13.  Appellant
complained that by excluding the other exhibits the trial court denied his
client “an opportunity to present a defense.”

To
the extent that Appellant’s points concern the exclusion of Defense Exhibit No.
3––a judgment of misdemeanor DWI repetition––we overrule both points because
DWI is not a crime of moral turpitude.  See Shipman v. State, 604 S.W.2d
182, 184 (Tex. Crim. App. 1980).

As
to the other exhibits that the trial court excluded, this court has recognized
the court of criminal appeals’ exception to rule 609’s prohibition of remote
convictions when an intervening conviction shows that the convicted person has
not reformed the behavior that led to the prior convictions.  See Jackson v.
State, 50 S.W.3d 579, 591 (Tex. App.––Fort Worth 2001, pet. ref’d) (citing McClendon
v. State, 509 S.W.2d 851, 855–57 (Tex. Crim. App. 1974) (op. on reh’g)).  But
even under this exception, sometimes called the “tacking” doctrine, a trial
court must determine whether the probative value of the convictions outweighs
their prejudicial effect.  Hankins v. State, 180 S.W.3d 177, 179 (Tex.
App.––Austin 2005, pet. ref’d); see Jackson, 50 S.W.3d at 592.  Here,
because the trial court determined that the exhibits’ probative value did not
outweigh their potential for prejudice, we need not determine whether the tacking
doctrine applies.  What we do need to determine, however, is whether the record
supports the trial court’s determination that the exhibits’ probative value did
not outweigh any prejudicial effect.

In
conducting a balancing test to determine whether the probative value of a
defendant’s prior convictions outweighs their prejudicial effect, the court of
criminal appeals set out a list of nonexclusive factors in Theus, 845
S.W.2d at 880.  Adapting these factors to prior convictions of a witness, we
will consider (1) the prior convictions’ impeachment value; (2) their temporal
proximity to the incident at issue in the trial; (3) the similarity between the
prior offenses and the present incident; (4) the importance of the
complainant’s testimony; and (5) the importance of the credibility issue.  See
id.; see Jackson, 50 S.W.3d at 592.

Impeachment
Value

In Theus,
the court of criminal appeals stated that “when a party seeks to impeach a
witness with evidence of a crime that relates more to deception than not, the
first factor weighs in favor of admission.”  Theus, 845 S.W.2d at 881.  We
agree with the State that DWI is not a crime of deception, so its impeachment value
is low.  The impeachment value of judgments showing a history of DWI
convictions would be higher in this case if Sherry had denied that she had such
a history, or if she had denied that she had been drinking.  But although
Appellant claims in his brief that Sherry denied that she was intoxicated, our
review of the record, particularly in the places cited by Appellant, does not
support this claim.[2]  Because DWI is not a
crime of deception and because Sherry admitted she had a drinking problem that
included a long history of DWI convictions, we hold that this factor weighs
against admission.

Temporal
Proximity

The
court documents that Appellant complains the trial court erred by excluding date
from the eighties and nineties.  But as the State points out, the trial court
admitted the more recent convictions.  Moreover, Sherry admitted to a lifetime
of drinking and to having a problem with it.  We agree with the State that the
temporal proximity factor weighs against admitting the more remote judgments.

Similarity

Evidence
that Sherry had prior convictions for DWI is similar to Appellant’s claim that
she was drinking while driving during the incident at issue in his trial.  The
court of criminal appeals weighs this factor against admission due to the
potential that the remote DWIs could be considered more to prove a pattern of
conduct than for impeachment purposes.  See id. (citing United States
v. Jackson, 627 F.2d 1198, 1210 (D.C. Cir. 1980); United States v. Hayes,
553 F.2d 824, 828 (2d Cir.), cert. denied, 434 U.S. 867 (1977)).

Importance
of the Witness’s Testimony and Credibility  

Sherry
testified that Appellant ordered her to drive to specific locations and
threatened her with a shotgun.  Appellant admitted striking Sherry with his
fist and with the shotgun but denied kidnapping her.  Had he and Sherry been
the only eyewitnesses, Sherry’s testimony and credibility would have been more
important.  But the importance of her testimony and credibility were mitigated
because Valeria, Appellant’s girlfriend at the time of the offense, corroborated
Sherry’s testimony that Appellant ordered her at gunpoint to drive as he
directed, and although she agreed with him that Sherry was drunk and driving a
little over the speed limit, she did not feel that the driving was dangerous
enough to ask to be let out.

Application
of the Five Factors

In
reviewing the trial court’s weighing of these factors and its ruling on the
admissibility of a prior conviction, “we must accord the trial court ‘wide
discretion.’”  Theus, 845 S.W.2d at 881 (citing United States v.
Oaxaca, 569 F.2d 518, 526 (9th Cir.), cert. denied, 439 U.S. 926
(1978)).

In Theus,
the court of criminal appeals held that the trial court abused its discretion
by admitting a prior conviction when its lack of impeachment value overrode the
other factors.  Id. at 882.  Here, as in Theus, we have held that
Sherry’s excluded prior convictions lack impeachment value.  In addition, we
have held that the temporal proximity and similarity factors weigh against
admission.  Weighing all these factors, we hold that the trial court acted
within its discretion by excluding the exhibits.  See id.  Accordingly,
we overrule the remainder of Appellant’s first point.

Constitutional
Claims

In
his second point, Appellant contends that the trial court denied him his due
process and confrontation rights by limiting cross-examination of Sherry
regarding her prior felony convictions.  The State contends that Appellant’s
argument on appeal does not comport with his complaint at trial.

Appellant
argued below that excluding the impeachment evidence to show the jury the full
extent of Sherry’s prior convictions prevented him from presenting a defense. 
Here, he argues that he was improperly denied his right to full
cross-examination to reveal the full extent of Sherry’s previous convictions
and her motive to lie.

The constitutional
right to present a defense includes the right to compulsory process and the
rights to confront and cross-examine witnesses.  See Holmes v. State,
323 S.W.3d 163, 173 (Tex. Crim. App. 2009) (op. on reh’g) (citing Holmes v.
South Carolina, 547 U.S. 319, 324, 126 S. Ct. 1727 (2006)).  Because the
right to present a defense is a composite of several rights, Appellant’s trial
objection could have more precisely alerted the trial court to the complaint he
now presents on appeal.  Nevertheless, we shall assume without deciding that the
objection sufficiently encompassed the claims he now raises on appeal, that is,
that he was denied his constitutional right to confront and cross-examine his
accuser.  Whether or not Appellant sufficiently preserved his claim, we need
not address the merits because even if we were to hold that the claim was
preserved and that the trial court erred by excluding evidence of the
complainant’s thirty-year history of DWI, the other evidence admitted at trial
would compel us to hold that beyond a reasonable doubt the trial court’s ruling
did not affect the verdict.

Sherry’s
drinking was no secret to the jury.  The State mentioned it in its opening
statement.  The trial court allowed Appellant to present to the jury judgments
showing that she had prior DWI convictions for offenses going back to February
1998.  Defense Exhibit 13 shows that Sherry was put on probation for a
DWI–repetition offense committed on February 2, 1998.  Defense Exhibit 11 shows
that she also possessed cocaine on that date.  Defense Exhibits 11 and 12 both
show that Sherry had violated the terms of her probation by committing another
DWI on March 31, 2002, which she pled guilty to.  Further, after Sherry admitted
that she had a drinking problem and a history of DWI convictions, Appellant had
the opportunity to cross-examine her regarding that impeachment evidence. 
Consequently, after carefully reviewing the record and performing the required
harm analysis under rule 44.2(a), we hold that beyond a reasonable doubt the
trial court=s error, if any, did not contribute to Appellant=s
conviction or punishment.  See Tex. R. App. P. 44.2(a).  We therefore
overrule the remainder of Appellant’s second point.

Conclusion

Having
overruled Appellant’s two points, we affirm the trial court’s judgment.

 

 

LEE GABRIEL
JUSTICE

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT
and GABRIEL, JJ.

DAUPHINOT, J., filed a
dissenting opinion.

PUBLISH

DELIVERED:  May 24, 2012

 




 

 









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00505-CR

 


 
 
  
 MARCOS ANTONIO CELIS
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 89th
District Court OF WICHITA COUNTY

----------

DISSENTING
OPINION[3]

----------

Appellant contends that the
trial court abused its discretion under rule 609 of the Texas Rules of Evidence
and denied him his rights of due process and of confrontation and
cross-examination under the Sixth and Fourteenth Amendments by prohibiting his
impeaching his accuser with seven prior felony convictions and two revocations
of community supervision.  Appellant’s issue as framed was not addressed by the
trial court or the majority in this court.  Instead, both the trial court and
the majority have reframed his issue and addressed that reframed issue, which
is not Appellant’s issue, thereby denying Appellant his constitutional right to
present his defense.  I must therefore respectfully dissent from the majority’s
opinion analyzing Appellant’s issue as reframed by the State and the trial
court rather than analyzing Appellant’s issue as actually presented by
Appellant both here and below.

The majority analyzes the
arguments of the State and Appellant and the trial court’s ruling under Theus[4]
rather than under Fielder.[5]  In Fielder,
the Texas Court of Criminal Appeals explained that “[t]he theory of
the prosecution and the defensive theory or theories determine the ‘material’
issues in each individual case.”[6]  Fielder raised a
battered-wife defense.[7]  When she attempted to
offer expert evidence in support of her defensive theory, her defense was
recast by both the State and the trial court as traditional self-defense.  The
Texas Court of Criminal Appeals explained,

The trial judge told counsel he had tried to relate the
evidence to the issue of whether the defendant had acted in protecting herself
under Texas self defense law and found the evidence had “no relevance”. 
Thereafter, the testimony of an associate of Dr. Shupe, William A. Stacy,
Ph.D., was excluded upon the State’s objection that it was hearsay and
irrelevant. [8]

The traditional self-defense analysis was a non-starter because
Fielder had discovered her husband with his new girlfriend shortly before killing
him by shooting him seven times when he was unarmed.[9]

In the instant case, Appellant
couched his theory as impeaching Maldonado’s ability accurately to recall and
recount the events of the night in question that the State argued constituted
kidnapping and offering evidence to support his necessity defense because of her
reckless, intoxicated driving.  Contrary to the State’s and trial court’s
constructs, Appellant’s theory of the case was not that Maldonado lacked
credibility merely because she was a convicted criminal but, rather, because of
her long history of substance abuse and driving recklessly while under the
influence of intoxicants.

Appellant
testified that he had eaten some bad food the night before the events in
question, was ill, and had asked Maldonado to drive him to the hospital.  His
girlfriend, Torres, sat in the front seat of Maldonado’s car.  Appellant
admitted that he carried his shotgun.  According to Appellant, Maldonado was
drinking heavily, had an opened bottle of vodka in the backseat of the car, and
removed from her bra and threw away a crack pipe.  Appellant claimed that
instead of going to the hospital, Maldonado drove to her house to get more
alcohol.  Appellant stated that he had fought with her because of his need to
get Torres and himself out of her car safely and because, in her highly intoxicated
state, Maldonado was acting wildly and erratically and driving dangerously.

Torres
testified that she asked Maldonado for a ride to the hospital because she was
sick.  Torres confirmed that Appellant sat in the back seat of Maldonado’s car
on the passenger side and that he was also sick.  Torres also testified that
Appellant told Maldonado to drive to the East Side, but she refused.  Torres
testified that as Maldonado tried to turn onto the street where her house was
located, Appellant had his gun out and threatened her.  Torres also testified
that Appellant had hit Maldonado with his gun.  Torres testified that
ultimately, Appellant and Maldonado struggled, Maldonado lost control of the
wheel, and Torres pulled the car over and put it in “Park.”  Torres testified
that the gun went off as Maldonado and Appellant fought for it, shooting a hole
through the front windshield.  Torres admitted that she had pled guilty to
kidnapping Maldonado.

Appellant’s
theory of the case was that because of her intoxication and her history of
substance-abuse convictions, Maldonado was not a reliable witness and that his
version of the facts raising his necessity defense was rational in light of her
long history of abusing alcohol and drugs while driving.  Appellant, therefore,
wanted the jury to know about Maldonado’s many prior convictions for driving
while intoxicated, a reasonable strategy in light of his necessity defense. 
The State, viewing Appellant’s attempt to offer Maldonado’s prior convictions
as traditional impeachment, argued that most of the prior convictions were
inadmissible because they were more than ten years old.  The trial court
sustained the State’s objections to all convictions more than ten years old, despite
the tacking doctrine that clearly made them admissible even under traditional
notions of impeachment.[10]

Appellant
contends that the trial court erred by limiting cross-examination of Maldonado
regarding prior felony convictions such that his right of due process and his
right to confront and cross-examine under the Sixth Amendment were denied.  That
is, the State and the trial court were allowed to recast his defense and in so
doing denied him his right to put on his defense, just as Fielder was denied
her right to put on her defense when her battered-wife defense was recast as
traditional self-defense.

The Fielder
court explained,

[Fielder’s]
theory of the case was that she had suffered tortuous physical, emotional and
sexual abuse at the hands of her husband; that this violent prior relationship convinced
her he could and would kill her if she disclosed his sexual proclivities to
anyone else; that on the night of the homicide, when she revealed she had
discussed their relationship with an attorney, she tried to run away, but he
pulled a firearm and indicated verbally he would make good on past threats to
kill her; that because of her fear and belief he would kill her, when given the
opportunity, she grabbed the gun and shot him to death.

The
State’s theory was that [Fielder] was a competent professional woman who was
madly in love with her husband; that even though Darwin went a bit too far in
his sex “games”, [she] willingly participated in and enjoyed most of them. 
Thus, [Fielder’s] prior relationship with Darwin did not produce in her a fear
of him as she claimed, but rather, when she found out he was involved with
another woman, she pulled a gun and shot her husband in a jealous rage.

Thus,
of the four “condition of mind” issues which were raised by the parties’
respective theories, the only one which was contested was the reasonableness of
[Fielder’s] apprehension of fear that Darwin was about to use deadly force
against her at the time of his killing.  This was the main contested issue in
the case.

Viewed
in this context and in light of the trial testimony as a whole, it is clear
that the inference the State sought to have the jury draw from the questioned
cross and re-cross-examination was that [Fielder], in fact, was not afraid
of Darwin as a result of his violent acts during the marriage, or that her fear
was not of a degree to warrant the inference that she reasonably believed he
was going to kill her at the time of the shooting.

In
order to establish her “fear” (apparent danger from her standpoint) at the time
of the offense, [Fielder] produced past violent encounters with the deceased. 
This is an established method of proof in self-defense cases, because the law
recognizes the fact that future conduct may be reasonably inferred from past
conduct.[11]

In
the instant case, Appellant argued below that excluding the impeachment
evidence of Maldonado’s convictions for continuous substance abuse prevented
him from presenting a defense.  Here, he argues that he was improperly denied
his right for full cross-examination to reveal the full extent of Maldonado’s intoxication
and intoxicated, dangerous driving.  There is no substantial difference between
the complaint below and the complaint on appeal.

In Irby
v. State,[12]
the Texas Court of Criminal Appeals, relying on decisions of the United States
Supreme Court, explained,

The
constitutional right of confrontation includes the right to cross-examine the
witnesses and the opportunity to show that a witness is biased or that his
testimony is exaggerated or unbelievable.  Nonetheless, the trial judge retains
wide latitude to impose reasonable limits on such cross-examination “based on
concerns about, among other things, harassment, prejudice, confusion of the
issues, the witness’ safety, or interrogation that is repetitive or only
marginally relevant.”[13]

The Irby
court relied in part on United States v. Abel,[14] in which the United States
Supreme Court held that evidence that both the bank robbery defendant and the
defense witness belonged to the same prison gang, whose tenets required its
members to lie, cheat, steal, and kill to protect each other, was admissible
because it was probative of the defense witness’s possible bias toward the
defendant.[15] 
The Irby court also relied on Delaware v. Van Arsdall,[16] in which the
United States Supreme Court held that it was error to prohibit any
cross-examination of a State’s witness concerning the possibility that he might
be biased in favor of the State because of dismissal of his pending
public-drunkenness charge.[17]

The
right to present a complete defense is rooted in the constitutional rights to
due process under both the Fifth and Fourteenth Amendments to the United States
Constitution; the right to due course of law under article one, section
nineteen of the Texas Constitution; the Sixth Amendment right to confront and cross-examine
witnesses; and the same right under article one, section ten of the Texas
Constitution.[18] 
The Texas Court of Criminal Appeals has reminded us of the importance of a
defendant’s being allowed to present a complete defense, stating,

In
Holmes v. South Carolina, the Supreme Court stated, “Whether rooted
directly in the Due Process Clause of the Fourteenth Amendment or in the
Compulsory Process or Confrontation Clauses of the Sixth Amendment, the
Constitution guarantees criminal defendants ‘a meaningful opportunity to
present a complete defense.’”  In the case before us, the trial court’s ruling
disallowing cross-examination of the State’s expert witness violated the
defendant’s fundamental rights to a fair trial.  The Supreme Court said in Pointer
v. Texas:

There
are few subjects, perhaps, upon which this Court and other courts have been
more nearly unanimous than in their expressions of belief that the right of
confrontation and cross-examination is an essential and fundamental requirement
for the kind of fair trial which is this country’s constitutional goal. 
Indeed, we have expressly declared that to deprive an accused of the right to
cross-examine the witnesses against him is a denial of the Fourteenth Amendment’s
guarantee of due process of law.

Because the denial of
the right to present a defense is a violation of due process and results in
constitutional error, we now turn to the harm analysis.[19]

The
trial court abused its discretion by refusing to admit evidence of Maldonado’s
prior convictions and revocations, Defense Exhibits 1, 4, 5, 6, 7, 8, 9, and
10.  Because the trial court refused to admit the evidence upon which
Appellant’s entire defense was predicated, he was denied his due process right 
to present his defense.  Constitutional error requires analysis under rule of
appellate procedure 44.2(a).[20]  The question is therefore
whether the trial court=s error was harmless beyond
a reasonable doubt.[21] 
In applying the Aharmless error@
test, the primary issue is whether there is a Areasonable
possibility@ that the error might have contributed
to the conviction.[22]

In
determining constitutional harm, we must evaluate the entire record in a
neutral, impartial, and even-handed manner, not Ain
the light most favorable to the prosecution.@[23]  The
error here was exacerbated by the fact that the prior convictions involved
substance abuse, and significant issues at trial were whether Maldonado was
intoxicated, the degree of her intoxication, and its effect on her judgment and
on her driving.  The remoteness of some of the convictions does not make them
less probative.  Rather, they show that the duration of her addiction was
long-term and severe.

The
majority points out that when the State offered the evidence that had been
excluded when Appellant offered it, the evidence was admitted.  Consequently,
the majority concludes that because that evidence was eventually admitted, the
trial court’s error, if any, did not contribute to Appellant’s conviction.  But
the issue becomes whether the State may recast Appellant’s defensive issues. 
Appellant sought to present the evidence of the prior convictions to support
his defense of necessity based on Maldonado’s dangerous and intoxicated driving
and to support his argument that Maldonado’s intoxication and addiction prevented
her ability accurately to recount the events of that night.  The State recast
the issues as simple impeachment based on prior felony convictions and crimes
of moral turpitude.

Because
the majority does not analyze the issues in the context of Appellant’s actual
defensive theory but rather as a question of general admissibility of any prior
conviction, I must respectfully dissent.

 

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PUBLISH

 

DELIVERED:  May 24, 2012

 









[1]See Tex. R. App. P. 47.4.





[2]An officer that Sherry ran
up to after she got out of the car testified that Sherry was panicked, scared,
and crying, but that she did not appear intoxicated.





[3]See Tex. R. App. P. 47.4.





[4]Theus v. State, 845
S.W.2d 874, 879 (Tex. Crim. App. 1992).





[5]Fielder v. State, 756
S.W.2d 309, 318 (Tex. Crim. App. 1988).





[6]Id.





[7]Id.
at 317.





[8]Id.





[9]See id. at 310–12. 





[10]See Lucas v. State,
791 S.W.2d 35, 51 (Tex. Crim. App. 1989); Jackson v. State, 50 S.W.3d
579, 592 (Tex. App.—Fort Worth 2001, pet. ref’d).





[11]Fielder, 756
S.W.2d at 319 (citation omitted).





[12]327 S.W.3d 138 (Tex.
Crim. App. 2010), cert. denied, 131 S. Ct. 904 (2011).





[13]Id. at 145
(citations omitted).





[14]469 U.S. 45, 105 S. Ct.
465 (1984).





[15]Id. at 49, 105 S.
Ct. at 467.





[16]475 U.S. 673, 106 S. Ct.
1431 (1986).





[17]Id. at 678–79, 106
S. Ct. at 1435.





[18]See U.S. Const.
amends. V, VI, XIV; Tex. Const. art. I, §§ 10, 19.





[19]Holmes v. State,
323 S.W.3d 163, 173 (Tex. Crim. App. 2009) (op. on reh’g) (citations omitted).





[20]Tex. R. App. P. 44.2(a).





[21]See Williams v. State,
958 S.W.2d 186, 194 (Tex. Crim. App. 1997).





[22]Mosley v. State,
983 S.W.2d 249, 259 (Tex. Crim. App. 1998), cert. denied, 526 U.S. 1070
(1999).





[23]Harris v. State,
790 S.W.2d 568, 586 (Tex. Crim. App. 1989), disagreed with in part on other
grounds by Snowden v. State, 353 S.W.3d 815, 820–22 (Tex. Crim. App. 2011).