LEE ANN DAUPHINOT, Justice,
dissenting.[1]
Appellant contends that the trial court abused its discretion under rule 609 of the Texas Rules of Evidence and denied him his rights of due process and of confrontation and cross-examination under the Sixth and Fourteenth Amendments by prohibiting his impeaching his accuser with seven *698 prior felony convictions and two revocations of community supervision. Appellant’s issue as framed was not addressed by the trial court or the majority in this court. Instead, both the trial court and the majority have reframed his issue and addressed that reframed issue, which is not Appellant’s issue, thereby denying Appellant his constitutional right to present his defense. I must therefore respectfully dissent from the majority’s opinion analyzing Appellant’s issue as reframed by the State and the trial court rather than analyzing Appellant’s issue as actually presented by Appellant both here and below.
The majority analyzes the arguments of the State and Appellant and the trial court’s ruling under Them[2] rather than under Fielder.[3] In Fielder, the Texas Court of Criminal Appeals explained that “[t]he theory of the prosecution and the defensive theory or theories determine the ‘material’ issues in each individual case.”[4] Fielder raised a battered-wife defense.[5] When she attempted to offer expert evidence in support of her defensive theory, her defense was recast by both the State and the trial court as traditional self-defense. The Texas Court of Criminal Appeals explained,
The trial judge told counsel he had tried to relate the evidence to the issue of whether the defendant had acted in protecting herself under Texas self defense law and found the evidence had “no relevance”. Thereafter, the testimony of an associate of Dr. Shupe, William A. Stacy, Ph.D., was excluded upon the State’s objection that it was hearsay and irrelevant.[6]
The traditional self-defense analysis was a non-starter because Fielder had discovered her husband with his new girlfriend shortly before killing him by shooting him seven times when he was unarmed.[7]
In the instant case, Appellant couched his theory as impeaching Maldonado’s ability accurately to recall and recount the events of the night in question that the State argued constituted kidnapping and offering evidence to support his necessity defense because of her reckless, intoxicated driving. Contrary to the State’s and trial court’s constructs, Appellant’s theory of the case was not that Maldonado lacked credibility merely because she was a convicted criminal but, rather, because of her long history of substance abuse and driving recklessly while under the influence of intoxicants.
Appellant testified that he had eaten some bad food the night before the events in question, was ill, and had asked Maldonado to drive him to the hospital. His girlfriend, Torres, sat in the front seat of Maldonado’s car. Appellant admitted that he carried his shotgun. According to Appellant, Maldonado was drinking heavily, had an opened bottle of vodka in the backseat of the car, and removed from her bra and threw away a crack pipe. Appellant claimed that instead of going to the hospital, Maldonado drove to her house to get more alcohol. Appellant stated that he had fought with her because of his need to get Torres and himself out of her car safely and because, in her highly intoxicated state, Maldonado was acting wildly and erratically and driving dangerously.
*699 Torres testified that she asked Maldonado for a ride to the hospital because she was sick. Torres confirmed that Appellant sat in the back seat of Maldonado’s car on the passenger side and that he was also sick. Torres also testified that Appellant told Maldonado to drive to the East Side, but she refused. Torres testified that as Maldonado tried to turn onto the street where her house was located, Appellant had his gun out and threatened her. Torres also testified that Appellant had hit Maldonado with his gun. Torres testified that ultimately, Appellant and Maldonado struggled, Maldonado lost control of the wheel, and Torres pulled the car over and put it in “Park.” Torres testified that the gun went off as Maldonado and Appellant fought for it, shooting a hole through the front windshield. Torres admitted that she had pled guilty to kidnapping Maldonado.
Appellant’s theory of the case was that because of her intoxication and her history of substance-abuse convictions, Maldonado was not a reliable witness and that his version of the facts raising his necessity defense was rational in light of her long history of abusing alcohol and drugs while driving. Appellant, therefore, wanted the jury to know about Maldonado’s many pri- or convictions for driving while intoxicated, a reasonable strategy in light of his necessity defense. The State, viewing Appellant’s attempt to offer Maldonado’s prior convictions as traditional impeachment, argued that most of the prior convictions were inadmissible because they were more than ten years old. The trial court sustained the State’s objections to all convictions more than ten years old, despite the tacking doctrine that clearly made them admissible even under traditional notions of impeachment.[8]
Appellant contends that the trial court erred by limiting cross-examination of Maldonado regarding prior felony convictions such that his right of due process and his right to confront and cross-examine under the Sixth Amendment were denied. That is, the State and the trial court were allowed to recast his defense and in so doing denied him his right to put on his defense, just as Fielder was denied her right to put on her defense when her battered-wife defense was recast as traditional self-defense.
The Fielder court explained,
[Fielder’s] theory of the case was that she had suffered tortuous physical, emotional and sexual abuse at the hands of her husband; that this violent prior relationship convinced her he could and would kill her if she disclosed his sexual proclivities to anyone else; that on the night of the homicide, when she revealed she had discussed their relationship with an attorney, she tried to run away, but he pulled a firearm and indicated verbally he would make good on past threats to kill her; that because of her fear and belief he would kill her, when given the opportunity, she grabbed the gun and shot him to death.
The State’s theory was that [Fielder] was a competent professional woman who was madly in love with her husband; that even though Darwin went a bit too far in his sex “games”, [she] willingly participated in and enjoyed most of them. Thus, [Fielder’s] prior relationship with Darwin did not produce in her a fear of him as she claimed, but rather, when she found out he was involved with another woman, she pulled a gun and shot her husband in a jealous rage.
*700 Thus, of the four “condition of mind” issues which were raised by the parties’ respective theories, the only one which was contested was the reasonableness of [Fielder’s] apprehension of fear that Darwin was about to use deadly force against her at the time of his killing. This was the main contested issue in the case.
Viewed in this context and in light of the trial testimony as a whole, it is clear that the inference the State sought to have the jury draw from the questioned cross and re-cross-examination was that [Fielder], in fact, was not afraid of Darwin as a result of his violent acts during the marriage, or that her fear was not of a degree to warrant the inference that she reasonably believed he was going to kill her at the time of the shooting.
In order to establish her “fear” (apparent danger from her standpoint) at the time of the offense, [Fielder] produced past violent encounters with the deceased. This is an established method of proof in self-defense cases, because the law recognizes the fact that future conduct may be reasonably inferred from past conduct.[9]
In the instant case, Appellant argued below that excluding the impeachment evidence of Maldonado’s convictions for continuous substance abuse prevented him from presenting a defense. Here, he argues that he was improperly denied his right for full cross-examination to reveal the full extent of Maldonado’s intoxication and intoxicated, dangerous driving. There is no substantial difference between the complaint below and the complaint on appeal.
In Irby v. State,[10] the Texas Court of Criminal Appeals, relying on decisions of the United States Supreme Court, explained,
The constitutional right of confrontation includes the right to cross-examine the witnesses and the opportunity to show that a witness is biased or that his testimony is exaggerated or unbelievable. Nonetheless, the trial judge retains wide latitude to impose reasonable limits on such cross-examination “based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness’ safety, or interrogation that is repetitive or only marginally relevant.”[11]
The Irby court relied in part on United States v. Abel[12] in which the United States Supreme Court held that evidence that both the bank robbery defendant and the defense witness belonged to the same prison gang, whose tenets required its members to lie, cheat, steal, and kill to protect each other, was admissible because it was probative of the defense witness’s possible bias toward the defendant.[13] The Irby court also relied on Delaware v. Van Arsdall,[14] in which the United States Supreme Court held that it was error to prohibit any cross-examination of a State’s witness concerning the possibility that he might be biased in favor of the State because of dismissal of his pending public-drunkenness charge.[15]
*701 The right to present a complete defense is rooted in the constitutional rights to due process under both the Fifth and Fourteenth Amendments to the United States Constitution; the right to due course of law under article one, section nineteen of the Texas Constitution; the Sixth Amendment right to confront and cross-examine witnesses; and the same right under article one, section ten of the Texas Constitution.[16] The Texas Court of Criminal Appeals has reminded us of the importance of a defendant’s being allowed to present a complete defense, stating,
In Holmes v. South Carolina, the Supreme Court stated, “Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants ‘a meaningful opportunity to present a complete defense.’” In the case before us, the trial court’s ruling disallowing cross-examination of the State’s expert witness violated the defendant’s fundamental rights to a fair trial. The Supreme Court said in Pointer v. Texas:
There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country’s constitutional goal. Indeed, we have expressly declared that to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment’s guarantee of due process of law.
Because the denial of the right to present a defense is a violation of due process and results in constitutional error, we now turn to the harm analysis.[17]
The trial court abused its discretion by refusing to admit evidence of Maldonado’s prior convictions and revocations, Defense Exhibits 1, 4, 5, 6, 7, 8, 9, and 10. Because the trial court refused to admit the evidence upon which Appellant’s entire defense was predicated, he was denied his due process right to present his defense. Constitutional error requires analysis under rule of appellate procedure 44.2(a).[18] The question is therefore whether the trial courts error was harmless beyond a reasonable doubt.[19] In applying the harmless error test, the primary issue is whether there is a reasonable possibility that the error might have contributed to the conviction.[20]
In determining constitutional harm, we must evaluate the entire record in a neutral, impartial, and even-handed manner, not in the light most favorable to the prosecution.[21] The error here was exacerbated by the fact that the prior convictions involved substance abuse, and significant issues at trial were whether Maldonado was *702 intoxicated, the degree of her intoxication, and its effect on her judgment and on her driving. The remoteness of some of the convictions does not make them less probative. Rather, they show that the duration of her addiction was long-term and severe.
The majority points out that when the State offered the evidence that had been excluded when Appellant offered it, the evidence was admitted. Consequently, the majority concludes that because that evidence was eventually admitted, the trial court’s error, if any, did not contribute to Appellant’s conviction. But the issue becomes whether the State may recast Appellant’s defensive issues. Appellant sought to present the evidence of the prior convictions to support his defense of necessity based on Maldonado’s dangerous and intoxicated driving and to support his argument that Maldonado’s intoxication and addiction prevented her ability accurately to recount the events of that night. The State recast the issues as simple impeachment based on prior felony convictions and crimes of moral turpitude.
Because the majority does not analyze the issues in the context of Appellant’s actual defensive theory but rather as a question of general admissibility of any prior conviction, I must respectfully dissent.

. See Tex.R.App. P. 47.4.

. Theus v. State, 845 S.W.2d 874, 879 (Tex.Crim.App.1992).

. Fielder v. State, 756 S.W.2d 309, 318 (Tex.Crim.App.1988).

. Id.

. Id. at 317.

. Id.

. See id. at 310-12.

. See Lucas v. State, 791 S.W.2d 35, 51 (Tex.Crim.App.1989); Jackson v. State, 50 S.W.3d 579, 592 (Tex.App.-Fort Worth 2001, pet. ref’d).

. Fielder, 756 S.W.2d at 319 (citation omitted).

. 327 S.W.3d 138 (Tex.Crim.App.2010), cert. denied, - U.S. -, 131 S.Ct. 904, 178 L.Ed.2d 760 (2011).

. Id. at 145 (citations omitted).

. 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984).

. Id. at 49, 105 S.Ct. at 467.

. 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674(1986).

. Id. at 678-79, 106 S.Ct. at 1435.

. See U.S. Const, amends. V, VI, XIV; Tex. Const, art. I, §§ 10, 19.

. Holmes v. State, 323 S.W.3d 163, 173 (Tex.Crim.App.2009) (op. on reh’g) (citations omitted).

. Tex.R.App. P. 44.2(a).

. See Williams v. State, 958 S.W.2d 186, 194 (Tex.Crim.App.1997).

. Mosley v. State, 983 S.W.2d 249, 259 (Tex.Crim.App.1998), cert. denied, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

. Harris v. State, 790 S.W.2d 568, 586 (Tex.Crim.App.1989), disagreed with in part on other grounds by Snowden v. State, 353 S.W.3d 815, 820-22 (Tex.Crim.App.2011).